JOHN LINDT v. THE SCHLITZ BREWING COMPANY, Appellant.

Implied Contract to Pay Double Commissions: ESTOPPEL BY REPRE-SENTATIONS OF BROKER: *Failure of consideration for representations.* Plaintiff· sued for commissions for purchasing property for defendants, on the theory, that with defendant's knowledge, he was to receive commission from both defendants and the vendor. Plaintiff, however, during the negotiations, had written a letter to defendants, stating that, if they were under the belief that he expected to receive commissions from both sides, they were mistaken; that, if he received a commission from the other side, he would charge defendants only for legal services. On receipt of this letter, defendants forwarded the purchase price. Plaintiff testified that the letter was written

at the instance of an agent of defendants, who promised him other business from the company, sufficient to repay him for the release of commissions. *Held*, that as defendants' agent could have no authority to deceive defendants, and as the jury might have found that defendants acted on the strength of the letter, it was error to instruct for plaintiff, though abstractly correct, that where both parties to a sale had notice that an agent acts for both, he may receive compensation from both, and that if the letter releasing commissions was written in consideration of further business, and that defendants had further business, which they refused to give to plaintiff, he was entitled to recover. Though the broker may have a remedy because the promise to furnish other business, which induced his letter, was not performed, still the failure of the consideration for that letter would not, if the principal relied on the letter, make an implied contract to pay a commission additional to one received from the seller.

Brokers: DOUBLE COMMISSIONS: *Materiality of evidence.* In an action by a broker for commissions in purchase of lands for defendants, the issue being whether plaintiff could have a commission from a buyer after having been paid one by the seller, defendants having introduced the vendor as a witness, and he having testified that he paid commissions to such broker for effecting the sale, it was not error to exclude evidence of the amount paid by him, it being immaterial.

SAME. Where, in an action for services, plaintiff had just testified that a bill which he had once presented to defendants, and which was paid, was rendered before any of the transactions in controversy arose, and that some of the items in suit were not in such bill, it was not error to sustain objection to a question as to why they were not so included.

*Appeal from Council Bluffs Superior Court.*—HON. E. E. AYLESWORTH, Judge.

WEDNESDAY, JANUARY 30, 1901.

ACTION at law to recover attorney's fees, and a commission for the purchase of real estate. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Harl & McCabe* and *Edson Rich* for appellant.

*Sims & Bainbridge* for appellee.

DEEMER, J.—Plaintiff claims that he rendered services for the defendant, at its instance and request, in purchasing some land in the city of Council Bluffs; in examining, as an attorney at law, certain abstracts of title; and in searching for property for the defendant. That plaintiff did render services for defendant in the matter of purchasing property is conceded. That property was purchased of one Lutz, and it is contended that plaintiff had an agreement with him (Lutz) whereby he agreed to pay plaintiff a commission for selling the property; that plaintiff could not act as agent of both parties, and is not, therefore, entitled to a commission from defendant. Lutz was a witness for defendant, and testified that he paid plaintiff a commission for selling his property. He was then asked what the percentage was. Objection to the question was sustained, and the ruling is assigned as error. We think it was correct. The fact that he paid Lindt a commission was material, but the exact amount paid was not.

Plaintiff at one time rendered a bill to defendant, which was paid. This bill did not include some of the items now sued for. After stating that the bill was rendered before any of the transactions in controversy arose, that it had reference to another transaction, and that the items, or some of them, now sued for, were not in the bill, he was asked why. Objection to the question, in view of this record, was properly sustained.

Defendant asked an instruction to the effect that, as plaintiff was the agent of Lutz for the sale of the property, he could not collect a commission from defendant without showing that, with knowledge of Lutz's contract for commission, defendant expressly agreed to pay plaintiff a commission for purchasing the property. This was refused and in lieu thereof the court instructed that plaintiff could not recover if he acted as agent for both parties, unless it was shown that defendant was notified that

plaintiff was claiming a commission from both, and with this knowledge, derived through its agent, completed the purchase and took the benefit of plaintiff's services. The instruction concludes as follows: "The law is that, where both principals consent or have notice that the agent acts for both parties, the disability referred to in the first part of the insurance is removed." It is against public policy for an agent to represent both buyer and seller. Each has the right to rely on his skill, knowledge, and influence, and, as the interests of buyer and seller usually conflict, the law does not ordinarily allow one to assume this double relation. If, however, the buyer has full knowledge that the agent is acting for the seller, he may still employ him to purchase; and, if he does so, the agent is entitled to compensation for his services. There need not be an express agreement tn pay in such a case, but there must be full knowledge of the prior relation, and such facts and circumstances shown as will raise an implied contract to pay for the services. *Rice v. Wood,* 113 Mass. 133. Abstractly considered, the instruction announced a correct rule of law. The evidence tends to show, however, that after the Lutz property was called to the attention of the defendant's agent, and that agent had concluded to recommend the purchase thereof, he learned that plaintiff was to get a commission from Lutz, and said that it placed him in an awkward position. For some reason, not fully shown, but probably because of this fact, the purchase was not promptly closed up; and while it was pending, and before defendant sent the purchase price of the property, another agent of the company, whose authority in the premises is not shown, induced the plaintiff to write it a letter, of which the following is a copy: "Council Bluffs, Iowa, May 30th, 1894. Jos. Schlitz Brewing Co., Milwaukee, Wis.—Gentlemen: Your agent, Mr. Siemsen, has just been to see me about your matters in this city. There is undoubtedly a misunderstanding in this matter, either upon your part, or else your Mr. Kirkhoff mis-

understood me. He wanted to know what my fees would be,. and authorized me to purchase pieces of property that I am at work at for you. Now, about my fees: I told Mr. Kirkhoff that my terms were these: That I would charge five per cent. for purchasing the property, which charge included all legal work in the matter, such as examining abstracts and preparing proper papers. Of course, I thought when I told Mr. Kirkhoff that he understood me that I would not charge you folks any commission, if I got a commission from the other party, the seller of the property, in which case I would only charge you a reasonable fee for the legal work, as I don't do business that way, and I would under no circumstances collect pay from both sides. Where the sellers pay you would not have to pay any commission; and I told Mr. Kirkhoff that I was getting a commission from Mr. Jacob F. Lutz, so that you would not have to pay a commission on that place. Now, gentlemen, my reputation would be ruined if I was to charge fees from both sides, and I have been here nearly twenty-five years, and no one can ever say that I have done my work in that way. If I did, I would have no practice or business. I am sorry, gentlemen, that you have this impression—that I charged both parties. If I was doing that, I would undoubtedly have kept the thing to myself, and would not have told Mr. Kirkhoff that I was getting a commission from Mr. Lutz. As I said before, I don't work on both sides of a case, as my honor and reputation are worth more to me and my family than a few paltry dollars. I have always been known to stand by my client through thick and thin, and not sell out and forsake him. If I do your business, I expect to do it honorably and squarely, or not do it at all, and get the property as cheap as possible to get it. I therefore trust that after you receive this, with this explanation, you will be satisfied. If you want any references, you can refer to Mr. Jno. Beresheim, vice president of the Council Bluffs Savings Bank; or to the First National Bank; to Jno. Linder, wholesale liquor dealer; Groneweg &Shoentgen, wholesale grocers; to E. L.

Shuggart, retired merchant; and all the other prominent citizens of this city. Hoping to hear from you on receipt of this, I remain, yours respectfully, John Lindt.") After the receipt of this letter the defendant forwarded the money, and the deed was delivered. Plaintiff testified that there was a "row on in Milwaukee," and that "one of defendant's agents came to him about charging them a commission, and wanted him to write a letter"; that he wrote the letter at the instance of this agent, who said there would be enough other business to more than repay him (plaintiff), and not to have any charge made about the Lutz property. "Insisted upon my writing that kind of a letter. Think I read it to him, and he said it was satisfactory. They did not give me any other business." There is no showing that either of defendant's agents above referred to was authorized to buy property  One had authority to inspect, and the other was a local agent who occasionally assisted in buying.

Respecting this evidence the court gave the following instruction: "(7) Relative to the testimony of the plaintiff —plaintiff's explanation of his letter to the defendant of May 30, 1894, to the effect that this was a request of one Siemsen, an agent of the defendant—you are instructed that, even though the evidence shows authority in Siemsen to make contracts with plaintiff for employment, and pay therefor, he was wholly lacking in authority to do any act for deception of his principal. He was not employed by his principal to deceive it or in any wise to mislead it, and this the law conclusively presumed was at the time known by plaintiff. But you should look at the letter, and determine from the contents of the letter, and the facts and circumstances bearing thereon, to determine whether defendants were deceived thereby; and if you find that said letter was written at the request of defendant's agent, and was written by plaintiff in consideration of further business, and if you find from the evidence that defend-

ant, when they had business in this locality, failed and re-
fused to give the same to plaintiff, then he may recover for
the service waived or released by the letter, if you find any
were released by said letter." Taken together, we think these
instructions were erroneous, as applied to the facts;—some of
which were in dispute, and some of which the jury were au-
thorized to find in accord with defendant's contention. It is
manifest that a controversy arose over the matter of double
commissions as soon as defendant's agent reported the facts,
which was after a price for the property had been agreed on.
In view of that fact, defendant had the right to repudiate
the purchase. Indeed, it seems that it held back and would
not complete it until plaintiff wrote the letter hitherto
quoted. It had the right to rely on that letter, and, if on the
strength of it the purchase was completed, plaintiff is not en-
titled to recover because of an implied contract as stated in
the first instruction. It was informed by that letter that he
(plaintiff) would not charge anything if he received a com-
mission from Lutz, and therefore would make no charge
against it. If it acted on the strength of this letter, as the
jury may have found, then no implied contract for the pay-
ment of a commission would arise. If it be said that
the letter was written at the request of defendant's
agent, and with the intent to deceive, as stated in the
second instruction quoted, it was nevertheless binding on
plaintiff. Whatever knowledge the agent may have received
under these circumstances would not be imputed to defend-
ant. But it does not appear that the agent who caused the
writing of the letter intended to deceive. For aught that ap-
pears, he thought plaintiff was in good faith and would not
claim a commission. The inference to be derived from the
evidence is that, according to the agent's version, plaintiff
was not to claim a commission for the sale of the property
because of his (the agent's) implied, if not express, promise
to give him enough other business to repay him for the work
done. But, however this may be, the ultimate question here

is, was there an implied contract for services, with knowl-
edge that plaintiff was acting as agent for the seller, as
stated in the instruction first referred to, in view of the letter
that was received by defendant before it consummated the
contract? Under the instructions given by the court, the
jury was justified in finding there was such a contract, not-
withstanding defendant acted on the strength of the repre-
sentations contained in the letter. It may be that plaintiff's
promise to forego a commission for the purchase of the prop-
erty was in consideration of the agent's promise to give him
(plaintiff) enough other business to repay him, and that the
agent did not do as he agreed; but, if that be true, it has no
bearing on the question of implied contract. Assume that
there was a failure of consideration for the statements con-
tained in the letter to the effect that plaintiff would not claim
a commission; that would not in itself establish an implied
promise to pay a commission, as stated in the instruction, un-
der the facts as the jury might have found them. The agent's
promise was taken in lieu of commission, and was a satisfac-
tion thereof. The remedy, if any, is on this promise, and not
on the implied contract. *Merry v. Allen,* 39 Iowa, 235; *Hall
v. Smith,* 15 Iowa, 584. We are not to be understood as assert-
ing that all the facts above recited are established. Some of
them are in dispute, but such as we have recited might have
been found; and, if they had been found as indicated, the in-
structions applied thereto would have mislead the jury, and
resulted in an erroneous conclusion. If the agent failed to
comply with his agreement, doubtless a remedy therefor may
be found. With that question we have no present concern.
The point we now decide is that the instructions given were
erroneous, as applied to facts that might have been found
by the jury. The letter to which we have referred may not
have been binding on plaintiff, because of failure of consid-
eration, but the question is broader than that. It is this:
Assume it was not binding on plaintiff as a contract; what
effect did it have on defendant, and what bearing does it have

on the claim of implied contract? Some other questions are argued, but they are not regarded as of sufficient importance to demand further attention. For the error pointed out, the judgment is REVERSED.