### P. M. CASADY v. R. W. CARRAHER, Appellant.

Real Estate: DOUBLE AGENCY: DUTY TO FORECLOSE: COMMISSIONS.
1   A real estate broker, in making an exchange of properties, who acts as the agent of both parties in bringing about the trade, must disclose his dual agency to both, to entitle him to a commission from either.

Right of Parties to Terminate Emplopment: WAIVER OF. On
2   learning of the double agency the parties may treat the employment as terminated and avoid liability, but if they accept the benefits of the agent's services in completing the transaction they waive this right.

Instruction: ASSUMPTION OF ISSUE: ERROR. An instruction which
3   assumed the agency of plaintiff for defendant, where that fact was an issue in the case, was prejudicial though the issue of compensation was separately submitted.

*Appeal from Woodbury District Court.*—HON. J. F. OLIVER, Judge.

FRIDAY, FEBRUARY 6, 1903.

ACTION for commission alleged to have been earned in procuring an exchange of properties. Verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Milchrist & Scott* for appellant.

*T. G. Henderson* and *R. H. Brown* for appellee.

LADD, J.—The plaintiff is a real estate dealer. About the middle of June, 1900, the defendant called at his office in Sioux City, and left a description of his three lots, with buildings thereon, situated in Hornick, Iowa, together with a stock of hardware and implements. The farm of M. J. Coombs·had been listed with plaintiff some time before. Defendant and Coombs examined their respective properties, and on the 26th of the month reached an understanding as to the terms of exchange. An agreement had been dictated to plaintiff's stenographer, and the parties concluded to lunch while the shorthand notes were being extended. The defendant then advised plaintiff that he would pay him no commission. This was the first information that Coombs had that plaintiff claimed also to be acting for Carraher. He and defendant talked the matter over on the way to the restaurant, but the latter did not sign the contract until the following morning. There is some dispute as to whether Coombs attached his signature before or after he learned of plaintiff's double agency, but this is immaterial, as it was after the terms had been settled orally, and before the written agreement had become effective.

The plaintiff undertakes to excuse his conduct on the ground that he was merely a middl·man, engaged to bring the parties together, and, as such, was not bound to disclose his relations with one to the other. See *Rupp v. Sampson*, 16 Gray, 398 (77 Am. Dec. 416); *Orton v. Scofield*, 61 Wis. 382 (21 N. W. Rep. 261). But in order to occupy that position, he

*1. DOUBLE agency: duty to disclose: commissions.*

should have limited his exertions to such service. If, in addition thereto, the middleman assists either in effecting a trade, he becomes to that extent a partisan agent, and the obligation immediately devolves upon him to disclose his agency to the other. *Strawbridge v. Swan*, 43 Neb. 781 (62 N. W. Rep. 199); *Copeland v. Insurance Co.*, 6 Pick. 203; note to *Leathers v. Canfield*, 117 Mich. 277 (45 L. R. A. 51, s. c. 75 N. W. Rep. 612). No definite value was put on their property by either defendant or Coombs in listing with plaintiff, and he was not authorized by either to negotiate the trade. But his compensation, as he claims, was dependant on an exchange, and he admits having exerted himself to the utmost to bring about the deal; advising each, apart from the other, that the trade was a desirable one to make. Under these circumstances, he was more than a middleman, for he attempted to aid each in effecting the exchange for which he was instrumental in bringing them together. Loyalty to either principal required him to disclose his relations to the other. The agent cannot serve two principals without the intelligent consent of both, and, if he undertakes to do so, compensation cannot be recovered for services rendered. *Wilson v. Webster*, 88 Iowa, 514; *Lindt v. Brewing Co.*, 113 Iowa, 200; *Bell v. McConnell*, 37 Ohio St. 396 (41 Am. Rep. 528); *Leathers v. Canfield*, 117 Mich, 277 (75 N. W. Rep. 612, 45 L. R. A. 33), and valuable note; *Rice v. Wood*, 113 Mass. 133 (18 Am. Rep. 459). Even with such consent, the utmost good faith toward each principal is exacted, and, unless each may be honestly served, the agency should be promptly terminated, *Morey v. Laird*, 108 Iowa, 670.

Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. "This doctrine," in the words of another, "has its

foundation not so much in the commission of actual fraud, as in that profound knowledge of the human heart which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth that 'a man cannot serve two masters.' '' Mechem, Agency, section 455. As both parties knew plaintiff had not seen the properties exchanged, and as no fact appears to have been misrepresented by him, nothing was in the way of acting for both, save the concealment of his relation to the defendant from Coombs. Up to the time the agreement was dictated, then, plaintiff was guilty of duplicity which would defeat recovery.

Had the parties walked out of the office, and themselves completed the transaction without his aid, he could have recovered compensation from neither. They were 2. RIGHT of not required to repudiate the oral understand- parties to terminate ing, and abandon the fruits of their effort in employment: waiver of. effecting an exchange of mutual benefit, in order to avoid such liability. They had the right to treat his employment as terminated, and proceed as though he had never acted for them. Possibly thereby they might avail themselves of the benefit of his services, but this was merely incidental to the situation. But they did not do this. They executed the contract he had caused to be prepared, and made the exchange through the instrumentality of the agent. Coombs not only raised no objection, but paid the commission as agreed. This certainly amounted to a ratification by him of all plaintiff had done in his behalf. In this situation, defendant ought not to be permitted to complain. He supposed all the time that plaintiff was acting for Coombs, and if it be found that he was also acting for himself, and without an understanding that there should be no compensation, then we see no reason for denying recovery.

II. The defendant, in his answer, denied having employed plaintiff to act for him. He testified that he merely inquired of plaintiff if he had a customer who would like to exchange land for his stock of implements; that plaintiff responded that he had such a man, and then took a description of the property; that defendant then said that he was putting in his own time trading, and wanted it understood that he would not pay a commission; that he was acting throughout for himself. The court, in the fourth paragraph of the charge, told the jury that:

3. INSTRUC-
TION: as-
sumption
of issue;
error.

"In this case it appears from the evidence that during the month of June, 1900, and at the instance or request of the defendant, the plaintiff procured a, customer for the defendant's stock of hardware and implements and his store building and town lots in question, in the person of one M. J. Coombs, with whom the defendant afterwards exchanged said property for certain farm land. It also appears from the evidence that at the time the defendant so listed his property with the plaintiff, in bringing said parties together and doing what he did in effecting said exchange he was representing or acting for both of them and claiming the right to charge and collect from each a commission for his services in so doing." The error in assuming that plaintiff was acting for and represented the defendant is manifest. A negative finding by the jury on these issues would have necessitated a verdict for the defendant. True the issue as to defendant's promise to pay a commission was submitted; but the assumption that he had received the benefit of plaintiff's services when this was in dispute was clearly prejudicial, for if the services be conceded to have been rendered the jury would quite naturally lean toward compensation.—REVERSED.