(June 24, 1913.)

## R. H. CLOPTON et al., Respondents, v. PETER MEEVES, Appellant.

[133 Pac. 907.]

VARIANCE BETWEEN PLEADINGS AND PROOF—REAL ESTATE BROKER—
BROKER AS AGENT OR VENDOR—MIDDLEMAN—RIGHT TO COMMISSIONS
—DOUBLE AGENCY.

1. Where a plaintiff in an action to recover commissions for the sale of real estate alleges that he was employed as a real estate broker and the defense is interposed that he had acted in a dual capacity and had collected commission from the purchaser, if the proofs justify it, the court may properly find that the plaintiff was a middleman employed only to bring the vendor and purchaser together, and under the provisions of secs. 4225 and 4226 of the Rev. Codes the court might order the pleadings immediately amended to conform to the proofs.

2. If a real estate agent or broker is employed as a mere middleman for the purpose only of bringing vendor and purchaser together and has no further duty imposed upon him by his contract of employment, and does not undertake to advise or counsel either side, and the parties so understand his employment and are so advised, he may charge and receive a commission from both vendor and purchaser.

3. If a real estate broker who claims to have been only a middleman has assisted either party in effecting or negotiating a trade or sale, or has made representation to either as to the value or advantages of the property of the other, he has to that extent made himself a partisan agent of the one or the other, and can no longer rightfully or lawfully represent the other party to the transaction.

4. The real purpose of the distinction made in the law between an agent and a middleman is to secure honest, fair and open service from the agent and to enable both vendor and purchaser to know whether the broker is acting as a partisan agent or merely for the purpose of bringing the parties together and from whom he is expecting compensation, and to remove from the agent as far as possible any temptation to serve one party to the detriment or disadvantage of the other.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

Action for debt.  Judgment for plaintiff.  Defendant appealed.  *Reversed.*

Garland Draper and W. A. Ricks, for Appellant.

A complaint setting up a cause of action for services rendered as brokers and agents will not support a judgment based on a finding that the services rendered were really as middlemen.  (*Uhrlaub v. McMahon,* 15 Ida. 349, 97 Pac. 784; *Stickney v. Hanrahan,* 7 Ida. 425, 63 Pac. 189; *Davis v. Devanney,* 7 Ida. 742, 65 Pac. 500; *In re Evans* (Utah), 130 Pac. 224.)

The material findings must not only be supported by the evidence but must substantially conform to the allegations of the complaint and be consistent with and uncontradictory of other findings.  (*Felton v. Le Breton,* 92 Cal. 457, 28 Pac. 490; *Hendy Co. v. Pacific Co.,* 99 Cal. 421, 33 Pac. 1084.)

The exact question presented herein of the right to recover as middleman in an action for services as broker has been raised and decided in numerous cases which fully sustain our contention.  (*Southack v. Lane,* 32 Misc. 141, 65 N. Y. Supp. 629; 19 Cyc. 276; *Levy v. Spencer,* 18 Colo. 532, 36 Am. St. 303, 33 Pac. 415.)

"When a person is employed to act as agent of another in dealing with a third person, and the nature of the employment is such that he is required to exercise judgment, discretion or personal influence in the execution of the agency, he cannot act also as the agent of the third party in the transaction without the knowledge and consent of his principal.  (1 Clark & Skyles, Agency, par. 364.)  A broker comes within this class, and in case of double employment he cannot collect therefor.  (*Clark v. Allen,* 125 Cal. 277, 57 Pac. 985.)  Double agency will not be permitted when broker has been employed as agent of either party, so that such employer expects and depends upon such employee to act in his interests solely and secure the most advantageous deal for him.  (Walker's Real Estate Agency, 51; *Farnsworth v. Hemmer,* 1 Allen, 494, 79 Am. Dec. 756.)

The circumstances under which this rule has no application and the exceptions thereto are set forth and well stated in *Synnott v. Shaughnessy,* 2 Ida. 122, 7 Pac. 82.

The respondents entered the employment of appellant in the fiduciary relationship of principal and agents. Their undertaking to make a sale of his property of itself created this relationship. (*Langford v. Issenhuth,* 28 S. D. 451, 134 N. W. 894; *Robinson v. Clock,* 38 App. Div. 67, 55 N. Y. Supp. 976; *Friar v. Smith,* 120 Mich. 411, 79 N. W. 633, 46 L. R. A. 229; *Walker v. Osgood,* 98 Mass. 348, 95 Am. Dec. 168; *Raurer etc. Co. v. Bradbury,* 3 Cal. App. 256, 84 Pac. 1009; *Scribner v. Collar,* 40 Mich. 375, 29 Am. Rep. 541; *Burnham etc. Co. v. Ranier,* 59 Fla. 179, 52 So. 622; *Tasse v. Kindt,* 145 Wis. 115, 128 N. W. 927, 31 L. R. A., N. S., 1225; Walker's Real Est. Agency, 51, 1088.)

And as long as such fiduciary relationship continued, they could not serve in the capacity of middlemen in matters involving the property listed with them as aforesaid, and there can be no recovery for services rendered as middlemen under such circumstances. (*Dennison etc. Co. v. Aldrich,* 114 Mo. App. 700, 91 S. W. 1026; *Raurer etc. Co. v. Bradbury,* 3 Cal. App. 256, 84 Pac. 1009; *Southack v. Lane, supra; Collins v. McClurg,* 1 Colo. App. 348, 29 Pac. 301; *Pinch v. Morford,* 142 Mich. 63, 105 N. W. 22; *Hannan v. Prentis,* 124 Mich. 417, 83 N. W. 102; *Braden v. Sherer* (Tex. Civ. App.), 128 S. W. 1159; *Scott v. Kelso* (Tex. Civ. App.), 130 S. W. 610.)

There must be an affirmative and clear showing that each of the parties had a full knowledge of all the circumstances and assented to the double employment. The burden is on the plaintiff to make this showing. (*Bell v. McConnell,* 37 Ohio St. 396, 41 Am. Rep. 528; *Hannan v. Prentis,* 124 Mich. 417, 83 N. W. 102; *Young v. Trainor,* 158 Ill. 428, 42 N. E. 139; *Lynch v. Fallon,* 11 R. I. 311, 23 Am. Rep. 458; *Green v. Southern State Lumber Co.,* 163 Ala. 511, 50 So. 917; 19 Cyc. 227, and citations.)

The rule is that the broker cannot recover as middleman when he negotiates the exchange and in some degree influences

the parties to make the trade, and thereby contributes some influence in the matter. (*Lloyd v. Colson*, 5 Bush, 587; *Hobart v. Sherburne*, 66 Minn. 171, 68 N. W. 841.)

There was no contract for services or compensation as middlemen upon which respondents can base action. (*Clark v. Allen*, 125 Cal. 277, 57 Pac. 985; 19 Cyc. 234; *Childs v. Ptomey*, 17 Mont. 502, 43 Pac. 716.)

Harry S. Kessler, for Respondents.

If it be conceded that we ask for money due as brokers, then their answer amounts to a denial that they were brokers, and couples with such denial a statement to the effect that they were middlemen and had been paid in full. (*Ach v. Carter*, 21 Wash. 140, 57 Pac. 344; *McGrath v. Gilmore*, 15 Wash. 558, 46 Pac. 1032; *Johnson v. Polhemus*, 99 Cal. 240, 33 Pac. 908.)

"The plain intention of our law is that when the parties are once in court, all conflicting claims shall be settled between them arising out of the subject matter involved in the issues." (*Burke Land etc. Co. v. Wells-Fargo & Co.*, 7 Ida. 42, 60 Pac. 87; *Grangers' Union v. Ashe*, 12 Cal. App. 757, 108 Pac. 533.)

"If the complaint can be construed favorably to the upholding of the judgment, such construction must be adopted." (*San Gabriel Valley Bank v. Lake View Town Co.*, 4 Cal. App. 630, 89 Pac. 360; *Kansas City & S. W. Ry. Co. v. Farnsworth*, 39 Kan. 356, 18 Pac. 202.)

The later authorities seem to practically agree upon a well-settled rule for distinguishing in a particular case whether or not the parties involved are employed and serving as brokers or middlemen. (*McLure v. Luke Admr.*, 154 Fed. 647, 84 C. C. A. 1, 24 L. R. A., N. S., 659; *Leathers v. Canfield*, 117 Mich. 277, 75 N. W. 612, 45 L. R. A. 44; *Herman v. Martineau*, 1 Wis. 151, 60 Am. Dec. 368; *Cox v. Haun*, 127 Ind. 325, 26 N. E. 822; *Synnott v. Shaughnessy*, 2 Ida. 111, 122, 7 Pac. 82; *Johnson v. Hayward*, 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 5 L. R. A., N. S., 112, 12 Ann. Cas. 800.)

AILSHIE, C. J.—This action was instituted for the collection of a commission for the exchange of real property. Plaintiffs alleged "That on or about the 1st day of February, 1912, the defendant listed the said real estate with the plaintiffs for sale or trade, and that said plaintiffs on or about the 10th day of July, 1912, found a purchaser who was ready, able and willing to purchase and exchange said land at a price agreeable to the defendant." The defendant alleged that the plaintiffs acted for and represented the purchaser and received a commission from the party to whom defendant made the exchange and was the agent of the other party, and that the plaintiffs had thereby precluded themselves from collecting a commission from the defendant.

It appears that about February, 1912, the appellant listed his land for sale or trade with the respondents and that no particular understanding or agreement was had with reference to the commission or compensation to be paid or the scope of the agency or authority of the real estate brokers. It appears, however, that the respondents were in the real estate business, known and understood as ordinary real estate agents are known and understood in the business. Sometime in May, 1912, appellant noticed an advertisement in a local paper wherein certain property was offered for sale or trade, and appellant immediately went to respondents' office and asked that one of the firm go at once and look at the property with a view to securing the same in exchange for a certain portion of his lands which they had listed. Clopton, a member of the respondents' firm, immediately went and saw the party who had inserted the advertisement in the paper and had an interview with him and examined his property. After he returned he saw appellant and described the property to appellant, and told him that he "thought it was a fair proposition," that he considered it a good chance or a good property, or something of that kind, and he thereafter took appellant to see the property and introduced him to the owner, whose name was Batt. After an interview had between appellant and Batt and the examination by appellant of Batt's property, Clopton took Batt to examine appellant's property.

These negotiations were carried on for some time, and finally an agreement was reached and an exchange and transfer of the property was had. When Clopton first saw and interviewed Batt, he entered into an agreement with him whereby Batt was to pay respondents a commission in the event an exchange or sale should be made. After the transaction was closed and the exchange of property was completed, the respondents presented their bill to Batt for commission which he paid. They thereafter called on Meeves, the appellant, for a commission from him, and he refused to pay and this action was thereafter instituted.

The original complaint was filed in this case, and the action was instituted on the theory that the plaintiffs in the action were real estate brokers and that they had listed defendant's property and undertaken to sell or exchange the same, acting in the capacity of real estate brokers. The court found, however, "that the plaintiffs in making said exchange had no discretion as agents for the said defendant in making the price or the terms of said exchange, but that said plaintiffs acted as middlemen, bringing together the defendant and the said Charles Batt for the purpose of making the aforesaid exchange." The judgment was entered on the theory that the respondents had acted as middlemen in simply bringing the parties together, and that they in no way acted as agents for either.

The appellant contends that the plaintiffs, having commenced their action for services as brokers and agents under the allegations of their complaint, cannot now recover as middlemen. Technically, this contention is correct, but under the liberal rule adopted by our statute (secs. 4225 and 4226, Rev. Codes; *Western Loan etc. Co. v. Kendrick State Bank,* 13 Ida. 336, 90 Pac. 112; *Penn. etc. Min. Co. v. Gallagher,* 19 Ida. 106, 112 Pac. 1044; *Johnson v. Gary,* 18 Ida. 627, 111 Pac. 855); we think the court might properly find according to the facts and that this variance would not be fatal. If the trial judge had thought it necessary, he might have ordered an immediate amendment to support the evidence and finding.

The important and essential question to be considered in

this case is the sufficiency of the evidence to support the findings and judgment. There is no question but that the appellant listed his property with respondents as real estate brokers, with the understanding that they would find a purchaser for the property or someone with whom he could make an exchange. It is admitted that the appellant had no notice or information that respondents were going to receive a commission from Batt, and, indeed, appellant had no reason, either by way of actual or constructive notice, to suppose that the respondents were expecting to receive compensation from the other party to the transaction or that they considered their relation to appellant such as would permit or justify their entering into such a relation with the other contracting party. Mr. Clopton, who negotiated the deal and who acted for respondents throughout this transaction, testified on the witness-stand as follows:

"Q. Well, you took some part in this trade, did you, you were the one—principally the one that put this trade through? A. I suppose I was the one that put this trade through, I didn't have any help that I found out about. Q. Didn't Meeves help you? A. Not that I know of. Q. You did most of the work? A. I examined both properties and got the men together; they were only together at certain times when I took them together. Q. You did most of the negotiating then on both sides? A. Yes, there was nobody else doing anything that I found."

Respondents appear to have had a written notice posted in their office during the times of this transaction stating their terms and commission charged by them in such transactions. They do not pretend to say that the appellant ever saw this notice or had his attention called to it. They do claim, however, that he was in their office a great deal and that this was posted on the wall and that he had an opportunity to see it, and they draw the inference that he did see it on account of its being conspicuous. He denies, however, having any notice whatever of this. This notice was written in ink on a sheet of paper six by nine inches, and contained the following words:

"RATES OF COMMISSION.

> "1st        $3,000        5%
> "2nd       $3,000        3%
> "Balance                 2–1/2%

"In case of Trade or Exchange, each party pays one-half of all commissions,

Values being equal."

It is clear to us from all the facts and circumstances of this case that whether the appellant had ever seen the foregoing notice or not, he had no reason whatever to suppose that in this transaction the respondents were representing anyone but him, and he clearly had no reason to infer that they were going to represent the other party or charge him a commission for carrying on this transaction.

It seems that the entire negotiation for this exchange of property was carried on by Clopton, and apparently he advised each party as to what he thought of the other party's property and the fairness of his offer. According to his own story, he must have entered actively into the negotiation. He was more than a disinterested onlooker, more than a mere middleman whose only duty is to bring the prospective contracting parties together. A distinction has been drawn by the courts between what is commonly known as a real estate broker or agent who undertakes to find a purchaser for a piece of property and to represent the owner in negotiating a sale, and that other personage known as a middleman who is not supposed to take any interest in negotiating the deal on the part of either party. This latter character has been variously defined by the courts. This court in *Synnott v. Shaughnessy*, 2 Ida. (111), 122, 7 Pac. 82, pointed out the distinction between an agent and a middleman as follows: "It is laid down as the law that if an agent act openly, and with the consent of both owner and purchaser, he may contract for and receive commission from both. . . . . And, again, if the extent of the agency be merely to bring the parties together, and does not involve the duty of negotiating for either, the agent is termed a 'middleman,' and may contract

for and receive commission from both. This is true also if each has agreed to pay the agent a commission, with or without the other's consent, if his duty is simply to bring the parties together.''

The Synnott-Shaughnessy case is cited with approval by the supreme court of Iowa in *Stapp v. Godfrey* (Iowa), 139 N. W. 893, and in that case Mr. Justice Deemer, speaking for the court, says:

"As we understand it, a middleman is one who acts as agent of both parties, and who sustains no such confidential relations to either as that he is bound to look after his interests. He is the agent of both, and merely brings the parties together in order that they may negotiate, he being under no duty of negotiating for either. (*Synnott v. Shaughnessy,* 2 Hasb. (Idaho) 122, 7 Pac. 82.) Strictly speaking, a middleman is one who simply undertakes to bring the parties together, and does not involve the duty of negotiating for either. He may contract for and receive a commission from both, for such an agreement is implied from the nature of the agency. (*Stewart v. Mather,* 32 Wis. 344; *Hedden v. Shepherd,* 29 N. J. L. 334; *Rupp v. Sampson,* 16 Gray (Mass.), 398, 77 Am. Dec. 416.) If the agent is understandingly employed as a mere middleman to bring the parties together, he may receive a commission from both with or without the other's consent, provided it is simply his duty to bring the parties together.''

The case of *Stapp v. Godfrey* is very interesting and illuminating, for the reason that it is similar in its principal facts to the case at bar, and the court there held that the plaintiff who was asking to recover a commission was more than middleman, and was in fact an agent who actually participated in the negotiations. In course of the discussion in that case the court said: "It is familiar doctrine that a real estate broker cannot act as agent for both buyer and seller, and receive a commission from each, without the consent of both. But this consent may sometimes be inferred from the nature of the agency.'' The court also quoted at length from *Casady v. Carraher,* 119 Iowa, 500, 93 N. W. 386, which

latter case considered and discussed the difference between the state of facts under which an agent will be termed a middleman who may collect a commission from both parties and an agent or broker who can collect from only the party employing him. In the Casady case the court said: "Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal." (*Clark v. Allen*, 125 Cal. 277, 57 Pac. 985; *McLure v. Luke*, 154 Fed. 647, 84 C. C. A. 1, 24 L. R. A., N. S., 659; note to *Leathers v. Canfield*, 117 Mich. 277, 75 N. W. 612, 45 L. R. A. 44; *Little v. Phipps*, 208 Mass. 331, 94 N. E. 260, 34 L. R. A., N. S., 1046; 19 Cyc. 226, 227; Walker, Real Estate Agency, secs. 475, 578.)

It must be conceded, we think, that if the broker who claims to have been only a middleman assisted either party in effecting or negotiating the trade or made any representations to either as to the value or advantages of the property of the other, he, to that extent, made himself a partisan agent and could no longer rightfully and lawfully represent the other party to the transaction. (*Strawbridge v. Swan*, 43 Neb. 781, 62 N. W. 199; *Stapp v. Godfrey* (Iowa), 139 N. W. 895; *Lindt v. Schlitz Brewing Co.*, 113 Iowa, 200, 84 N. W. 1059; *Rice v. Wood*, 113 Mass. 133, 18 Am. Rep. 459; *Walker v. Osgood*, 98 Mass. 348, 95 Am. Dec. 168; *Friar v. Smith*, 120 Mich. 411, 79 N. W. 633, 46 L. R. A. 229; *Pinch v. Morford*, 142 Mich. 63, 105 N. W. 22.)

An examination of the discussions that have taken place in the several courts of the country over this question discloses that the main object of the law in drawing the distinction between the two classes of employment is to enable the party employing the agent to obtain honest service, uninfluenced and unbiased by the private and monetary interests or opportunities of the agent. In this class of cases the real and important inquiry is not whether the agent has in fact overreached his principal, but whether he has placed himself in a position where there might be "an inevitable conflict between duty and opportunity" (*Just v. Idaho Canal etc. Co.*,

16 Ida. 650, 133 Am. St. 140, 102 Pac. 381); so that he might thereby be tempted to sacrifice the interest of one of his principals in order to consummate the sale or transaction and thereby secure his commission. It is the common experience and unanimous verdict of mankind that "no man can serve two masters," and so when a man goes into a court of justice seeking to recover a judgment where the proofs show that he has been occupying this twofold relation, the law denies him relief on the grounds that public policy forbids courts lending sanction or approval to an employment or relation which is by such general consent calculated to overtempt the one occupying such relation. When a man employs a real estate agent or broker to sell or exchange his property, he has a right in the ordinary and usual course of business to assume that he will have the advantage of the honest and fair advice of the agent as to prices and values and any other matters necessarily involved in such a transaction, and he also has a right to assume that such agent is better informed on these questions than anyone else. If the agent and broker, under such circumstances, expects to claim subsequently that he is only a middleman and that he has a right also to collect a commission from the purchaser, honesty and square dealing would dictate that he notify the vendor at the time of the employment or as soon thereafter as he determines to assume this dual capacity or the role of representative of both the vendor and vendee. A man who has property to sell would not ordinarily place much reliance upon the judgment of the agent of the prospective purchaser as to its value or the advantages of its location or anything else in relation thereto. On the other hand, the vendor would have a right to place great reliance upon his own agent who is supposed to be possessed of peculiar and unusual knowledge and information on these questions. If, on the other hand, the agent is going to collect a commission from both the vendor and vendee and his commission is contingent upon the sale or transfer being consummated, then it is at once of most vital importance to him to see that the sale or transfer be made. In such a case, if his advice and judgment is to be taken, there is great danger

of its being exercised to the detriment and disadvantage of one of the parties. It will become a matter of interest to the agent to eliminate differences between them and cause one or the other to cut his price on the property or to make terms more favorable than he otherwise would do. Whenever he does this, he enters a contest between the duty he owes to his employees on the one hand and the opportunity for private gain on the other, and in such a contest there is grave danger of duty being routed and opportunity coming off victorious.

In the case under consideration, the evidence does not support the finding that respondents were only middlemen employed for the sole purpose of bringing the parties together; it rather establishes their agency as real estate brokers and that they were employed as the agents of appellant. The judgment must be reversed, and it is so ordered, and the case is remanded with direction to the trial court to make findings and enter judgment in favor of the defendant, appellant herein. Costs awarded in favor of appellant.

Stewart, J., concurs.