S. B. FRITZ, Appellant, v. C. M. FRITZ, J. M. BERRY, FRANK ZEMAN, A. STREIT and FRITZ AND FRITZ.

**Partnership:** SETTLEMENT BETWEEN PARTNERS: ABANDONMENT: BURDEN OF PROOF: EVIDENCE. The member of a firm seeking to set aside a written agreement of settlement of the partnership business, on the ground that it had been abandoned by them, has the burden of proving the abandonment, which can not be done by a showing of mere inference or indefinite understanding to that effect.

**Same:** SUBSTITUTION OF NEW AGREEMENT. The parties to a controversy over mutual obligations may substitute therefor the mutual obligations of a new agreement, and when this is done their rights and liabilities will be determined thereby. In the instant case the substituted agreement is held to have become effective as a new agreement, rather than that their previous obligations should be extinguished when the settlement was fully carried out.

**Same:** RESCISSION. One partner can not rescind a contract of settlement between them regardless of the assent of the other by taking possession and disposing of partnership property as his own without tendering back any advantage he had already received under the contract.

*Appeal from Pocahontas District Court.*—HON. A. D. BAILIE, Judge.

WEDNESDAY, DECEMBER 16, 1908.

REHEARING DENIED THURSDAY, MARCH 18, 1909.

THIS action was originally brought by S. B. Fritz against C. M. Fritz for dissolution of partnership, the appointment of a receiver, and an accounting. A receiver was appointed by agreement of the parties, and subsequently a stipulation of settlement of all matters involved in the suit was entered into. After this stipulation of settlement was filed in the case, plaintiff filed a supplemental petition praying that the stipulation of settlement be set aside and canceled, and that an accounting be had between the partners as though no such settlement had ever been made. In this supplemental petition J. M. Berry and Frank Zeman were named as additional defendants, and asked to account for the proceeds of certain land, the title of which had passed through their hands, formerly belonging to the partnership. A. Streit was also made defendant as the holder of the title to said land in trust for the partnership. On separate answers of the defendants denying in general the allegations of plaintiff's amended and supplemental petition, there was a trial resulting in a decree dismissing said amended and supplemental petition, and taxing the costs of the proceedings thereunder to the plaintiff. Plaintiff appeals.—*Affirmed.*

*Ralston & Shaw* and *D. M. Kelleher,* for appellant.

*Maurice O'Conner, Lynch & Berry,* and *W. C. Garberson,* for appellees.

McCLAIN, J.—The ultimate facts necessary to be determined in order to dispose of this controversy are few, and the rules of law applicable thereto are simple and

1. PARTNERSHIP: settlement between partners: abandonment: burden of proof: evidence.

practically undisputed. Prior to the institution of the original action for dissolution of partnership and accounting, S. B. Fritz and C. M. Fritz, under the firm name of Fritz & Fritz, had been engaged in the mercantile business, and had sold their stock of goods in October, 1903, to one O. J. Hubbard, receiving in exchange a half section of Minnesota land valued at $7,000, which was subject to a mortgage of $2,500. The stock was taken by Hubbard at a valuation of $8,600, and Hubbard gave his note secured by a mortgage on the stock to the aggregate amount of $4,100. The notes and accounts of the firm were not sold to Hubbard, but were retained in the possession of C. M. Fritz, and they aggregated about $2,300. On Hubbard's failure to pay one of the purchase-money notes, Fritz & Fritz took possession of the stock of goods under their mortgage (in January, 1904), and brought a foreclosure suit against Hubbard, to which one Plummer was made defendant as holding a mortgage from Hubbard upon the stock; the contention of the plaintiffs in that suit being that the Plummer mortgage was subject to said plaintiff's mortgage, while Plummer claimed that by reason of some insufficiency in the recording of said plaintiff's mortgage he, Plummer, had acquired priority. Some arrangement was made between the parties to this foreclosure suit by which Fritz & Fritz were allowed to retain possession and dispose of the stock in the ordinary course of trade. The business was in this situation when S. B. Fritz instituted his action for dissolution of the partnership and accounting, C. M. Fritz having abandoned the part-

nership business of which he had previously been the active
manager. After the appointment of J. M. Berry as re-
ceiver, by agreement of parties a contract of settlement
between S. B. Fritz and C. M. Fritz was entered into
(November 26, 1904), in which it was stipulated that,
for the purpose of making a settlement of all matters be-
tween the members of said firm, S. B. Fritz agreed to
convey to C. M. Fritz all his right, title and interest in
and to the real property above referred to and all other
property of every kind and description embraced in the
order of court appointing J. M. Berry as receiver, and it
was further agreed that C. M. Fritz and S. B. Fritz were
each to have one-half of all the book accounts, bills receiv-
able, and other evidence of indebtedness growing out of
the sale of goods, merchandise, etc., since January, 1904,
and S. B. Fritz, however, to select from said book accounts,
bills receivable, and other evidences of indebtedness a total
amount in value of $140, and provision for the division
of the balance of said accounts and property was made.
It was also agreed that C. M. Fritz should pay $98.50
to plaintiff, and should satisfy the claims of Plummer,
Hubbard, and the trustee in bankruptcy of the estate of
Hubbard against the firm of Fritz & Fritz and against
any property owned by the firm, and furnish satisfactory
evidence of such settlement, and also pay the accounts of
two other specified creditors in small sums. It was stipu-
lated in this agreement that the two partners should each
pay one-half of all other indebtedness existing against the
firm, and one-half of all court costs and attorney's fees
made at the instance of both parties, and each should pay
the attorney's fees made at his own instance and request;
further, that S. B. Fritz should have all the merchandise,
goods, etc., belonging to the firm, being the whole of the
remainder of said stock of goods reconveyed by Hubbard to
said firm, and such additions thereto as had been made
by the firm or either member thereof. The only stipula-

tion in the contract of settlement with regard to the time of performance was that the settlement by C. M. Fritz with the trustee in bankruptcy of Hubbard and with Plummer should not be later than the last day of the January term, 1905, of the court in which the chattel mortgage foreclosure was pending, and that as soon as such settlement should be made then all other parts of the agreement were to be carried into effect immediately, excepting that the land was to be transferred to C. M. Fritz whenever it should be necessary to close the deal with the trustee in bankruptcy of Hubbard and with Plummer.

After the making of this agreement of settlement the title to the land was by the voluntary action of both partners vested in J. M. Berry individually, and not as receiver, Berry to hold the title for C. M. Fritz. S. B. Fritz, who was already in possession of the stock of goods, proceeded to treat it as his own property, and to dispose of it without consultation with or accounting to C. M. Fritz. Settlement with Hubbard's trustee and Plummer was not effected during the January term, 1905, of the court, but at the May term following a default was secured in the foreclosure suit which disposed of all claims of Plummer and the trustee of Hubbard against the stock of goods. In the meantime, however, there had been omissions on the part of C. M. Fritz with regard to the carrying out of the terms of the contract of settlement which it is now claimed justified a rescission thereof by S. B. Fritz, and it is further claimed S. B. Fritz took advantage of such default on the part of the other party to the agreement and did rescind it.

One of the chief claims made for appellant as constituting a showing that the agreement of settlement was practically abandoned by both parties to it is that nothing was done on either side to carry out its provisions. But such a claim is not in accordance with the evidence. Before the time when the foreclosure suit against Hubbard

and Plummer was to be settled, S. B. Fritz had begun to treat the stock of goods received back from Hubbard by the firm as his own property, and had made no effort to account for his disposition of the goods or the proceeds thereof, and on the other hand S. B. Fritz had joined with C. M. Fritz in placing the legal title to the real property in the hands of Berry in trust for C. M. Fritz. In this respect, therefore, the agreement of settlement had been in fact fully performed.

There was a delay of several months in the adjustment of the settlement with Hubbard's trustee and Plummer, but it does not appear that any damage resulted to the plaintiff on account of this delay, and, when the judgment by default was secured extinguishing all pretended claims on the part of Hubbard's trustee and Plummer on the stock of goods, C. M. Fritz had substantially complied with the agreement of settlement in this respect. Two other small claims by creditors of the firm were to be satisfied, but it does not appear that such claims have been pressed as against plaintiff nor that they are of any validity, and failure of C. M. Fritz to perform in this respect has never been insisted upon by plaintiff as a ground of rescission. With reference to the failure of C. M. Fritz to make plaintiff a cash payment of $98.50, it is enough to say that, before the filing of the supplemental petition asking a cancellation of the agreement of settlement, C. M. Fritz made a tender to plaintiff covering all his liability arising out of the agreement of settlement not already extinguished.

One other default on the part of C. M. Fritz is insisted upon by plaintiff, which consisted in the failure to pay an installment of interest on the mortgage subject to which the tract of land had been taken in exchange for the stock of goods. This installment of interest in the sum of $116 fell due prior to the date of the settlement, and, as no provision in the agreement had reference to the pay-

ment of such indebtedness, it was a debt equally of S.
B. Fritz and C. M. Fritz, who jointly held the title to
the land.    When, therefore, foreclosure of the mortgage
was threatened in March following the settlement, if this
installment of interest was not paid, there was no more
obligation on the one member of the firm than on the
other to make such payment, unless when title had been
vested by mutual consent in Berry there was some specific
undertaking binding him as trustee, or binding C. M.
Fritz, to extinguish such indebtedness.   No such undertak-
ing is shown.   It was not unnatural, therefore, that Berry
should have applied to plaintiff to satisfy such claim and
prevent a foreclosure, for such foreclosure would in fact
have resulted in loss to the plaintiff; C. M. Fritz being, as
it would seem, practically insolvent if this land was lost
to him, and therefore unable to carry out the other parts
of the settlement for the protection of plaintiff.   The ad-
vancement of this sum of money by plaintiff was then
nothing more than an advancement of one-half of the inter-
est charge to C. M. Fritz in a matter not covered by the
agreement of settlement, and, as it appears that plaintiff
then had in his hands accounts of a considerable value in
which C. M. Fritz had an interest, such advancement did
not in itself show an intention on the part of plaintiff to
rescind the agreement of settlement.   There is much con-
tradictory testimony as to what was said between Berry
and plaintiff at the time this advancement was made, and
it is insisted that plaintiff acted for the preservation of the
property only after he had a definite arrangement that the
agreement of settlement should be treated as abandoned.
We are satisfied, however, that plaintiff has not in this
respect established his case.   Something more than mere
inference or indefinite understanding ought to be shown
in order to establish the setting aside of a written agree-
ment of settlement formally entered into between the
parties.   In this respect the plaintiff had the burden of

proof, and he has not made out his case by a preponderance of the evidence.

Other conversations between plaintiff, Berry, and one Steinbilder, with whom it is said plaintiff listed the land for sale in disregard of the agreement of settlement, are also relied on as showing a mutual abandonment thereof. But here again there is much contradiction between the accounts of the witnesses, and we can do no more than say that plaintiff's contention is not sustained.

It is of considerable significance that no witness testifies as to any express and specific rescission of the agreement of settlement by plaintiff or renunciation thereof by C. M. Fritz. Whatever was said according to the testimony of any witness tending to show such rescission or abandonment was said as between plaintiff and Berry, who was the attorney of C. M. Fritz after the agreement of settlement was made, and it does not appear that Berry had any authority from Fritz to agree that this contract should be modified or superseded.

The legal proposition relied upon for plaintiff is that the agreement of settlement did not amount to an accord and satisfaction between the parties until it was carried out, and it must be conceded that if the agreement contemplated a settlement only when its provisions should be performed by C. M. Fritz, then it did not become effectual. On the other hand, it is well settled that the parties to a controversy in regard to their mutual obligations may substitute therefor the mutual obligations of a new agreement, and that when this is done their respective rights and liabilities are to be determined by the new agreement which has been substituted for such duties and obligations as previously existed. *Hall v. Smith,* 15 Iowa, 584; *Merry v. Allen,* 39 Iowa, 235; *Sioux City S. Y. Co. v. Sioux City P. Co.,* 110 Iowa, 396; *Lindt v. Schlitz Brew. Co.,* 113 Iowa, 200; *Smith v. Elrod,* 122 Ala. 269 (24 South. 994);

2. SAME: substitution of new agreement.

*Gulf, C. & S. F. R. Co. v. Harriet,* 80 Tex. 73 (15 S. W. 556).

There is some language in the agreement of settlement as already described which might support the contention that only a performance of the terms of the agreement by C. M. Fritz would relieve him from his previous obligations, but taking the language as a whole we are satisfied that the purpose of the parties was to extinguish their previous rights and liabilities and substitute therefor the rights and liabilities specified in the agreement. This view is corroborated by the fact that no specific time is mentioned for the performance of several of the obligations named in the agreement, and that after it was made the conduct of both parties was consistent with the theory of a substitution of an executory agreement rather than with the theory of an agreement that their previous rights and liabilities should be extinguished only when the settlement was completely carried out.

Finally, with reference to the right on the part of plaintiff to rescind regardless of assent on the part of C. M. Fritz, it is sufficient to say that such rescission could only be made on tendering back the advantage which plaintiff had already received under the contract of settlement by taking possession and disposing of the stock of goods as his own, and this plaintiff never attempted to do.

3. Same: rescission.

We are satisfied, therefore, that the trial court correctly held the agreement of settlement to be a complete substitution for the pre-existing rights and liabilities of the parties as partners, and that plaintiff therefore failed to show himself to be entitled to any relief under his amended and supplemental pleading.

The decree is *affirmed.*