JOHN T. GOSS, Appellee, v. FRED SMITH, Appellant.

**CONTRACTS:** Modification and Merger—Loss of Original Right of
1    **Action.** Parties to a controversy in regard to their mutual obligations may substitute therefor the mutual obligations of a new agreement; and when this is done, their respective rights and liabilities are to be determined *by the new agreement.*

PRINCIPLE APPLIED: Plaintiff, a real estate broker, had a contract with defendant for a commission, provided he made a *sale* of defendant's lands. Plaintiff effected an *exchange* only. Before the exchange was actually made, the parties, in order to settle all question over commission, entered into a new contract, to the effect that, for the services rendered by the broker in effecting the exchange, he, the broker, should have the sole agency for the sale of the lands traded for, and should have, as commission, half of such selling price over a fixed minimum per acre. No time was specified within which the broker should sell the lands received in the exchange, and, some six months later, defendant assumed to cancel the contract. In an action wherein the plaintiff pleaded an express contract for a commission, *held* that if defendant had breached said contract, such breach did not revive·the old original contract for a commission.

**CONTRACTS:** Performance—Time for Performance—Omission Sup-
2  plied by Law. The law, in the absence of a provision as to time
   for performance, requires a contract to be performed within a
   reasonable time, and such time is ordinarily a jury question.

. *Appeal from Black Hawk District Court.*—CHARLES W. MUL-
LAN, Judge.

FRIDAY, NOVEMBER 17, 1916.

ACTION to recover a commission for sale of real estate. Verdict and judgment for the plaintiff. Defendant appeals.— *Reversed.*

*Mears & Lovejoy,* for appellant.

*Paulsen & Wood,* for appellee.

EVANS, C. J.—The plaintiff alleged an express oral contract, to the effect that the defendant listed for sale with him a certain farm, and expressly promised to pay him a reasonable commission when the farm was sold.

1. CONTRACTS:
modification
and merger:
loss of original
right of action.

The defendant answered with a general denial. Upon the trial, the case developed by plaintiff's evidence was somewhat different from that set forth in his petition. The decisive question pre-

sented on this appeal is one of pleading and issue. The developments of the evidence were that the defendant listed with the plaintiff a farm of 370 acres for sale at $80 per acre. As to the agreement for commission, the plaintiff testified as follows:

"He told me he would pay a commission when the land was sold. It would be according to how good a deal I got him how much commission he would pay."

Thereafter, the plaintiff produced Beale as a customer. Beale was a proposed trader, and not a purchaser. He had a large tract of Canada land, which he proposed to trade at $25 per acre. Before accepting the proposed trade, the defendant wanted an understanding on the question of commission. He was unwilling to be subject to the payment of a commission for the exchange and to the payment of another commission for the sale of the Canada lands. Thereupon, and on the same day that the contract of exchange was entered into between the plaintiff and Beale, the following contract was entered into between the plaintiff and defendant concerning commissions.

"This contract and agreement, made and entered into this 28th day of April, 1914, by and between F. W. Smith of Waterloo, Black Hawk County, Iowa, party of the first part and John T. Goss, of Waterloo, Black Hawk County, Iowa, party of the second part, witnesseth: It is mutually understood and agreed by the parties that, for service rendered by party of the second part, he is to have the exclusive sale of the following described land. (Describing the Canada land.) It is further agreed that John T. Goss, party of the second part, is to receive one half of the purchase price in excess of $12.50 an acre, when the above land is sold."

It is conceded that this contract at the time fully covered the relations of the parties on the subject of commissions, and that it measured the full right and liability of each. When this contract appeared in evidence, the defendant amended his answer, and pleaded it affirmatively as a bar

to the claim of *quantum meruit*. The plaintiff filed reply, pleading that the defendant was estopped from relying upon such contract, because he himself had subsequently canceled it. It appears from the evidence that no sale of the Canada land had been accomplished, and, in October following the contract, the following correspondence was had between the parties:

"Dear Sir: Am writing you in reference to contract and agreement made and entered into the 28th day of April, 1914, between John T. Goss, of Waterloo, Iowa, and myself. This contract was covering the sale of the following described property in Canada: The south ½ of Section 5, Township 4, Range 28 west of the first P. M., and all of Section 23, Township 4, Range 30 west of the first P. M., containing in all 960 acres, more or less, according to the government survey. This is to notify you that I wish to cancel same, as there was no date mentioned in the contract.

"Yours very truly,

"F. W. Smith."

"Dear Sir: I have your letter of October 22nd, written at Nashua, Iowa, wherein you say that you wish to cancel the contract you and I have about my interest in the 960 acres of Canada land in the Beale deal. I do not understand what you mean. Do I understand that you claim now that I have no further interest in that land? I figure I have an interest in that land. Kindly let me know at once.

·Yours truly,

"John T. Goss."

The plaintiff also testified as follows:

"I consented to a cancellation of the Canada land contract. Q. In what way? A. I just made up my mind that I was out of it because he wrote me that letter. Q. You wrote him right back and told him you still considered you had an interest in it, didn't you? A. I consulted my coun-

sel. That was the condition, I should see him personally. Afterwards he told me to go ahead and sell if I could get a buyer. I told him I didn't have no buyers at the time. Can-. ada land wasn't selling very freely at the time.''

It appears to have been the view of the trial court that the contract was mutually canceled as a matter of fact, or else that it was breached by the defendant, and that, as a matter of law, such cancellation or breach had· the effect to revive the former status of the parties, and to entitle the plaintiff to recover a *quantum meruit,* and the jury was peremptorily instructed to that effect. We are constrained to the contrary view. If we were to hold as a matter of law that the cancellation of the contract, or breach thereof by the defendant, would restore the former status of the parties, the most that could be said under the evidence herein is that it was a question for the jury whether there was any breach of the contract by the defendant, and whether there was any attempted cancellation thereof by him in the sense of a rescission.

It will be noted that the contract fixed no time limitation for the sale of the Canada land. The law would, therefore, imply a reasonable time. Such was the theory of the defendant. His contention was that a reasonable time had elapsed when he wrote his letter of October 22d. It could not be found that he had breached the contract, without first finding that a reasonable time had not elapsed. That would be ordinarily a question for the jury; and, if material, was a jury question in this case.

2. CONTRACTS: performance: time for performance: omission supplied by law.

We think it clear also, as a matter of law, that the written contract set forth fixed the relation of the parties on that subject. The contract is complete and unconditional. Its execution is undisputed. The remedy for its breach, if any, is complete. If the defendant attempted wrongfully to terminate it, it was not thereby terminated, as far as the plaintiff's remedy was concerned. If the defendant attempted

rightfully to terminate it, then the exercise of his right surely could not revive a former status. The argument for the plaintiff is that the contract was a compromise, and was in the nature of an accord without present satisfaction, and that the defendant, having failed to perform, lost his right to rely upon the accord, and that the plaintiff became thereby entitled to his previous status. But the contract was not one of compromise. It was simply the culmination of the negotiations of the parties on the subject of commissions. Everything became merged in it. The defendant acted upon it in accepting the deal. Without it, the plaintiff would not have been entitled to a commission in any form. Previous to such contract, the plaintiff had no status which entitled him to a commission. His restoration to his previous status, therefore, would not give him a standing herein. The rights of the parties, therefore, must be determined under this contract. The burden of performance was on the plaintiff, and not on the defendant. It was the plaintiff that was to sell the Canada land, and he was bound to do it within a reasonable time. He could not forever hold the defendant to the burden of carrying the investment until market values should rise to the plaintiff's satisfaction. If the property could not be sold at an advance of over $12.50 an acre, then the trade had fallen short of the expectations of both parties, and there is no reason why one should be protected against loss in such expected margin at the expense of the other. The following excerpts from some of our previous cases are a sufficient indication of our previous holdings:

"It is well settled that the parties to a controversy in regard to their mutual obligations, may substitute therefor the mutual obligations of a new agreement, and that, when this is done, their respective rights and liabilities are to be determined by the new agreement which has been substituted for such duties and obligations as previously existed." *Fritz v. Fritz,* 141 Iowa 721.

"Although the parties to a contract may, by agreement between themselves, substitute a new contract in place of the original one, and in such case, if the new contract be not performed by either of the parties, the rights and remedies of the other must be determined by the new contract, and not by the old one." *Sioux City Stock Yds. Co. v. Sioux City P. Co.,* 110 Iowa 396.

"The agent's promise was taken in lieu of commission, and was a satisfaction thereof. The remedy, if any, is on this promise, and not on the implied contract." *Lindt v. Schlitz Brewing Co.,* 113 Iowa 200.

"Where the parties to the original contract entered into a new agreement based upon a new consideration which was accepted as a substitute for the former obligation, the right of action under such original contract is lost and the remedy must be sought under the new agreement." *Merry v. Allen,* 39 Iowa 235 (syllabus); *Hall v. Smith,* 15 Iowa 584.

Our conclusion reached at this point is decisive of the appeal, and we need not give consideration to the other questions presented. If the plaintiff has any cause of action, it must be based upon the contract. For the reasons indicated, the judgment below must be—*Reversed.*

LADD, GAYNOR and SALINGER, JJ., concur.