Benjamin Blecher, Appellant, v. William P. Schmidt et al., Appellees.

No. 40756.

February 17, 1931.

*Sam G. Pickus,* for appellant.

*Milchrist, Schmidt, Marshall & Jepson,* for appellees.

WAGNER, J.—The defendants were the owners of a stock of groceries and fixtures, located in the Sioux Apartments, at Nineteenth and Grand View Boulevard, Sioux City. On October 1, 1929, a written contract was entered into between the defendants and the plaintiff for the sale of said stock and fixtures to the plaintiff. By the terms of said written contract, the plaintiff agreed to buy, and the defendants agreed to sell, all the fixtures, good will, trucks, and all other equipment of every kind and description to the plaintiff for the sum of $2,000, and all of the merchandise at market price, to be determined by an appraisement of two parties, one selected by the plaintiff, and the other by the defendants, said inventory or appraisement to be made on October 7, 1929, and settlement to be made as soon as the appraisement was completed. The defendants agreed to accept $3,500 in cash of the purchase price, and to accept the note of the plaintiff, indorsed by a party or parties acceptable to the defendants, for the remainder. The estimated value of the merchandise was the sum of $3,000. The sum of $500 (the amount herein involved) of the purchase price was paid on the date of the execution of the contract.

It becomes important to first note what are the issues in the case. The plaintiff, in his substituted petition, alleges the execution of the aforesaid written contract, and further alleges, in substance: That, prior to the execution of said contract, the defendants represented and warranted to him that 90 per cent of the sales made in said store were for cash, and 10 per cent for credit, and that $2,000 was all the capital that was required to run this grocery store successfully and at a profit; that said representations and warranties were false, were known by the defendants to be false, and were made for the purpose of inducing the plaintiff to enter into the contract; that he relied upon the same, believing them to be true, and, so relying and believing, entered into said contract; that he had disclosed to the defendants that the entire amount of his capital was $4,000; that he later discovered that more than 50 per cent of the business done by these defendants in said store was for credit, and

at once rescinded said contract, and demanded the return of the $500, which the defendants have refused to pay.

While the appellant in his petition states that the defendants "represented and warranted," etc., yet it is apparent that plaintiff's cause of action is not, and could not be, founded upon  breach of warranty. The written contract contains no warranty, and it is a well recognized rule that, where the written contract of sale contains no warranty, or expresses the warranty that is given by the vendor, parol evidence is inadmissible to prove the existence of a warranty in the former case or to extend it in the latter by inference or implication. See *Electric Storage Battery Co. v. Waterloo, C. F. & N. R. Co.*, 138 Iowa 369. Neither do the statements contained in the petition amount to a warranty as to the condition of the merchandise bought. Therefore, the cause of action stated in plaintiff's petition must be construed as based solely upon fraudulent representations.

We now turn to the averments of the answer. It admits the execution of the contract, alleges nonperformance by the plaintiff, and denies the remaining allegations of plaintiff's petition. Hence, the issues are clearly and distinctly stated. The plaintiff alleges that he was induced to enter into the contract by reason of fraudulent representations made by the defendants. This is denied by the averments of defendants' answer. The plaintiff alleges that, upon discovery of the fraud, he at once (within a reasonable time) rescinded the contract and demanded the repayment of the $500. This is denied by the allegations of defendants' answer. Under the issues as made by the pleadings, if the plaintiff has established any fraudulent representation, as alleged therein, which was the inducement to his entering into the contract, and has established rescission within a reasonable time, then he is entitled to a return of the $500.

At the close of plaintiff's evidence, the defendants moved for a directed verdict, and the motion was overruled, the court saying, "I think it is very questionable whether your rescission

 is timely.'' At the close of all the evidence, the motion for a directed verdict being renewed, the same was sustained by the court. In passing upon a motion for a directed verdict, the court cannot determine as to the weight of the evidence, and the party against whom the motion is made is entitled to have taken as established every fact which his evidence fairly tends to prove. *Hartman v. Chicago G. W. R. Co.*, 132 Iowa 582; *Degelau v. Wight & Landon*, 114 Iowa 52. This rule is universally recognized.

We have read the record with care, and it appears from the plaintiff's testimony that he first saw this store on the 30th day of September, 1929; that he was desirous of purchasing  a stock of groceries; that he interviewed the defendants with that thought in mind; that he told them he had approximately $4,000; and that one of the defendants said, ''You will be able to run it,—it is practically all cash,'' that the business was practically a cash business, that they did over $91,000 of business last year, that it was practically all cash business, and that the book accounts amounted to something like $1,500 or $2,000 (the plaintiff did not purchase the book accounts). If plaintiff's testimony, as shown by the record, be true, there are shown the elements necessary to constitute the representation ''that 90 per cent of the sales made in said store were for cash and 10 per cent for credit,'' a fraudulent representation, within the meaning of the law. The plaintiff testifies that, the next day after the contract was signed, he was in the store most of the day, and that, on that day, the cash business amounted to $38, and credit business to $183; that he was there the following day, when the cash business amounted to $25 and the credit business to $100; that at that time he saw the book (which showed for several years the daily sales, the amount of cash and the amount of credit, the amount collected, and the amount of expenditures), and this book revealed quite an extensive credit business; that, during the month of September alone, the firm did a cash business of $700 and a credit business of $6,000. While the appellant was in the store on these two days, the store was in the possession of the defendants. The appellant testified in substance, that he saw that he could not conduct the busi-

ness with his limited capital of $4,000, and that he told one of the defendants that he would have to raise some more cash, and that said defendant told him "that was a good idea." The appellant testified that he liked the store, and that he tried to raise more money, even making the attempt to obtain the same from his brother in New York City. The inventory was made on the evening of October 7th, as specified in the contract. The total amount of the invoice of the stock of goods was $2,929.26, but this had not been computed at the time of the rescission, on the morning of October 8th. On the evening of October 7th, after the invoice was taken, the key of the store was delivered by the defendants to the appellant. Early the next morning, the rescission of the contract was made by the appellant, he returning the key to one of the defendants' firm, at the home of said defendant. It will be observed that the appellant has never been in the physical possession of the store; that he had the key, after the completion of the invoice the night of October 7, 1929, until the next morning, when it was returned to one of the defendants and rescission made. According to the appellant's testimony, he was making an effort to raise more money, after he discovered the extensive credit business done by the defendants, as to which he had been fraudulently misled; but since he was not able to raise the same, when his brother in New York City disappointed him, at the last moment, there was nothing for him to do but rescind. It will be observed that he ascertained the falsity of the aforesaid representation on the 2d or 3d of October, and his rescission was made on the early morning of October 8th. It is true that the burden was upon him to establish rescission within a reasonable time after ascertaining the falsity of the representation previously relied upon by him. What is a reasonable time must be considered with reference to all the circumstances. A lapse of time which would be unreasonable in one case may be entirely reasonable in another. 13 Corpus Juris 617; 35 Cyc. 151. Whether the right to rescind was exercised within a reasonable time is usually a question for the jury. 35 Cyc. 152; *Brennan & Cohen v. Nolan Laundry Co.,* 209 Iowa 922; *National Bank of Decorah v. Robison,* 199 Iowa 1044; *Chariton P. & H. Co. v. Lester,* 202 Iowa 475. It will be observed that the rescission was made within five or six days after the discovery of the falsity of the repre-

sentation relied upon, and, under the circumstances as revealed by the record, we cannot hold, as a matter of law, that the rescission was not made within a reasonable time. We cannot try the case *de novo*. Under the issues as drawn, all the plaintiff needed to prove, in order to recover, was fraud as alleged, and that rescission was made within a reasonable time. These are the matters which are asserted by the plaintiff and denied by the defendants. These questions should have been left to the jury.

It is true that an election by a defrauded party, after discovery of the fraud, to affirm the contract is final, and that an unequivocal act by the one defrauded, after discovery of the fraud which induced the sale, by which he elects to treat the sale as valid, is sufficient to preclude him from subsequently rescinding the sale on the ground of fraud. See *Seeley v. Seeley-Howe-Le Van Co.*, 130 Iowa 626; 13 Corpus Juris 624, 625, 626. The appellee relies upon this doctrine, but this question is not raised by defendants' general denial of the averments of plaintiff's petition. It will be observed, as suggested by the appellant in argument, that there is no affirmative allegation in defendants' answer, seeking to avoid the matters averred and relied upon by the plaintiff in his petition. The court cannot determine the case, except on the issues made by the pleadings. Under the record, these issues should have been left to the jury.

The court was in error in sustaining defendants' motion for a directed verdict, and the judgment of the trial court is hereby reversed, and the cause remanded for a new trial.—*Reversed and remanded.*

FAVILLE, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.