### 13757

#### W. T. FURGUSON LUMBER CO. v. ELLIOTT *ET AL.*

(172 S. E., 616)

*Messrs. Melton & Belser,* for appellant,

456 

*Mr. Charlton DuRant,* for respondent, 

January 17, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff brought action against defendant to recover the sum of $825.94, alleged to be due plaintiff for losses sustained by it in a lumber transaction between the two parties. After the service of the complaint, negotiations for settlement were opened and finally culminated in an agreement of settlement by the terms of which the defendant was to pay to plaintiff 50 per cent. of the amount claimed, in two installments, to wit, $212.97 on or before July 17, 1931, and $200.00 on or before August 7, 1931. The first installment was paid, when due; the second was not paid.

Pending these negotiations for settlement the time for answering the complaint was extended, subject to be terminated upon ten days' written notice from plaintiff demanding an answer.

After the filing of the summons and complaint in July, 1931, the plaintiff took no further action to bring the case to trial, and no written demand for the service of an answer was given. It appears from a statement of respondent's attorney that the file in the case was withdrawn by plaintiff from the hands of its attorneys who had brought the action. The defendant had not paid the balance of $200.00 due under the compromise settlement on or before August 7, 1931. In the fall of 1932 in negotiations conducted directly by the parties themselves, it was agreed that plaintiff would accept payment of the $200.00 still due under the compromise agreement in lumber, and under this agreement plaintiff was

to pay defendant's drafts for the value of the lumber shipped over the amount due plaintiff. Accordingly, orders for lumber were given by plaintiff and shipments made by defendant. Again disagreements arose; plaintiff did not pay defendant's drafts, alleging that the lumber was off grade and had been imperfectly manufactured, and had been rejected by its customers, entailing further losses upon plaintiff; so that after allowing credit on the proceeds of the shipments of lumber for the $200.00 due on the compromise settlement, defendant still owed plaintiff the sum of $129.90. It does not appear from the record that defendant ever filed an original answer. But on February 6, 1933, it obtained from Judge Rice an order which granted leave to file a "supplemental answer" alleging the compromise settlement of the cause of action alleged in the plaintiff's complaint, and the shipment of lumber thereunder by defendant, and other facts constituting a defense and counterclaim contained in the notice and proposed answer served on plaintiff. It appears from this answer that defendant shipped lumber upon the order of plaintiff of the value of $544.12, from which was deducted the sum of $200.00, due plaintiff by defendant on the compromise settlement, leaving the sum of $344.12 due defendant by plaintiff, which was set up as a counterclaim.

April 22, 1933, Judge Stoll granted to defendant leave to amend its answer by increasing the amount of its counterclaim to $1,344.12. To this amended answer plaintiff demurred, which demurrer was overruled by Judge Stoll. The defendant moved for and was granted leave to further amend its answer by increasing the amount of its counterclaim to the sum of $1,369.10. The plaintiff moved to set aside the order overruling the demurrer and to consider and sustain the demurrer. After hearing argument on the motion, his Honor passed an order affirming his order overruling the demurrer, and giving plaintiff 20 days in which to reply to the amended answer. He further ordered that any appeal from the orders overruling the demurrer should

not delay the hearing of the case on its merits. The case had been docketed by the defendant.

From these orders overruling the demurrer, plaintiff appeals.

To the proposed transcript of record, served by plaintiff, the defendant proposed amendments; from the order of Judge Stoll setting the case for hearing the defendant served notice of intention to appeal, but the appeal does not appear to have been perfected, and is deemed to have been abandoned.

September 6, 1933, Mr. Justice Stabler, on motion of the plaintiff, granted an order staying all proceedings in the Court below pending the final disposition of the appeal to this Court, with the right to plaintiff to reply to the counterclaim within ten days after the final disposition of the appeal; and with leave to the defendant to move before the Supreme Court at the October term to vacate the order.

Defendant made such motion, which was denied by the Court, which said: "While the trial Court may, upon overruling a demurrer, order a case to trial, we think under the peculiar circumstances and facts of this case, agreed to by both sides, that it would be best, and to the advantage of both parties, for this Court to first hear and determine the appeal taken by the plaintiff, before the case is heard in the Court below."

This ends the discussion of this matter and it is referred to only because it is adverted to in the arguments of counsel for the contesting parties.

It has taken much space to set forth the tangled skein of the transactions and proceedings of this case, but it was necessary to do so in order to properly understand it.

The demurrer to the answer and the counterclaim set up in the amended answer presented to the Judge of the lower Court two cardinal questions, and the exceptions by plaintiff to his order present to this Court those same questions, the solution to which will be determinative of the appeal:

Was there a compromise settlement of the suit originally commenced herein, which ended the suit, and which defendant could not revive, for the purpose of setting up by way of counterclaim, its alleged cause of action against plaintiff?

If the action was not ended by compromise settlement, and was still pending, could defendant set up, by way of counterclaim, a cause of action which arises out of transactions which occurred since the commencement of the suit?

There is no denial that the parties, after the service of the summons and complaint, and before any pleadings on the part of the defendant were served, agreed upon a compromise of the claim against defendant upon which the action was brought, at 50 per cent. of the amount thereof; that defendant agreed to pay and did pay $212.97 on or before the 17th day of July, 1931, and agreed to pay and did not pay $200.00 on or before August 7, 1931. Defendant alleges in its answer that thereafter the parties agreed that the defendant should pay the $200.00, still due under the compromise settlement, by shipping lumber to plaintiff, and that plaintiff should pay defendant's drafts for the purchase price of the lumber over and above the $200.00. And it alleges that it did ship the lumber and that after paying its debt to plaintiff there was due it the sum set up in its answer and counterclaim.

In view of these allegations of the amended answer, it is difficult to appreciate the logic of defendant's contention that the compromise agreement was never consummated, and therefore the action was never ended. The gist of its counterclaim is that it overpaid the $200.00, due on the compromise agreement, and that plaintiff owes it for the overpayment, and damages for refusing to pay its drafts. Counsel argues that there has been no order to discontinue the suit, nor any notice of intention to abandon it. We think that an action will be held to be ended when the parties agree upon a compromise and settlement of the cause of action and the terms of the agreement are complied with. In this case the very

foundation of defendant's claim rests upon its assertion that it has complied with the terms of the agreement to settle.

From the case of *Pryor v. Newbold,* 69 S. C., 426, 48 S. E., 275, 276, we take this:

"We consider first the defense of settlement, because, if it is found that the parties themselves by contract ended the case, it would manifestly be not only unnecessary, but improper, for this Court to revive and discuss issues which the parties themselves had set at rest. * * *

"We must therefore regard the fact established that an agreement was made to end the case, and that the defendant carried out his part of the contract. * * * The contract, therefore, was not executory, but fully executed by the defendant, and the plaintiff could not afterwards annul the agreement and press the case for trial."

No more could the defendant in the present case, having, as it alleges, carried out the contract which ended the suit, revive it for the purpose of pressing a claim against the plaintiff.

"On the breach of a contract for compromise which has been partly performed the remedy is an action on the contract for damages for the portion remaining unperformed, *and the party cannot repudiate the contract and rely on the original cause of action.*" (Italics added.) 12 C. J., 355.

The author quotes the following from the case of *Love v. Van Every,* 91 Mo., 575, 4 S. W., 272: "Although there has been only a partial performance of the compromise agreement, yet if the creditor has obtained the substance of everything stipulated for therein he cannot abandon the compromise agreement and sue to recover the original debt, but his proper action is for breach of the agreement."

In the present case the defendant breached the agreement of settlement. Yet it seeks to revive the original action in order that it may by way of counterclaim set up an alleged cause of action. We think it cannot be done.

"After a valid compromise agreement has been entered into any subsequent remedy of the parties with reference to the matters included therein must be based on the agreement, it operating as a merger and bar of all included claims and all pre-existing causes of action, and it is not necessary that the compromise shall have been performed." 12 C. J., 337, 338.

This author quotes the following from the case of *Fritz v. Fritz*, 141 Iowa, 721 *et seq.*, 118 N. W., 769: "It is well settled that the parties to a controversy in regard to their mutual obligations may substitute therefor the mutual obligations of a new agreement, and that when this is done their respective rights and liabilities are to be determined by the new agreement which has been substituted for such duties and obligations as previously existed."

It is unnecessary to cite other authorities. The conclusion of the Court is that the action begun by plaintiff against defendant was terminated by the compromise agreement of 1931.

In the case of *Landow & Co. v. Rizer*, 152 S. C., 236, 149 S. E., 225, there is some similarity in the facts of that case to these in the case we are considering. The defendant shipped melons to plaintiff at the price of $300.00, the shipper to pay the freight which amounted to $178.16. Plaintiff inadvertently failed to deduct the amount of freight and remitted the whole amount to defendant. This action was brought to recover it. The answer set up seven counterclaims. The first five may be considered in a group. The defendant shipped a number of cars of melons to plaintiff; the plaintiff, upon notice of arrival, wired the defendant that the melons were defective or underweight, and asked him to make a reduction of the price. They agreed upon the reduction and plaintiffs paid the defendant in full therefor, $225.00. The defendant claimed that after the settlement he ascertained that the melons were not defective, and he sought to reopen the controversy by setting up his claim as a coun-

terclaim to plaintiff's action. Motions for directed verdict were refused and the jury found in favor of the defendant on his counterclaim. This Court, disposing of the appeal, said:

"We think that his Honor should have directed a verdict in favor of the plaintiffs for $178.16 upon their cause of action * * * and in favor of the plaintiffs upon the seven counterclaims. * * *

"As to the five first counterclaims there was accord and satisfaction." Citing numerous authorities from this and other jurisdictions.

If it were conceded that the action was not ended by the compromise agreement, the question remains for consideration: Can the defendant maintain this answer and counterclaim?

It must be admitted that the cause of action which defendant sets up in its answer by way of counterclaim arose after the commencement of the action. The agreement of compromise required defendant to pay a certain sum on the 17th day of July, 1931, which was paid on that date; and to pay another sum on the 7th day of August, 1931, which sum was not paid on that date. It appears that plaintiff continually sought to collect this second installment due under the compromise agreement, and the defendant alleges that in 1932 the parties agreed that defendant might pay this sum in lumber. Under this agreement lumber was shipped by defendant, and there arose disagreements between the parties out of which comes the cause of action which is set up in the counterclaim.

Section 467 of the Code provides that an answer must contain: (1) A general or specific denial of the allegations; (2) a statement of new matter constituting a defense or counterclaim.

It is patent that if defendant had answered the complaint within twenty days after its service upon it, it could not

have set up the counterclaim it now pleads, because the facts out of which the cause arose had not then occurred.

Section 468 of the Code provides that:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had *in the action,* and arising out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction *set forth in the complaint* as the foundation of the plaintiff's claim, or connected with the subject of the action.

"(2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

Defendant's counsel argues that there is no provision in the first subdivision above set out that the cause of action therein allowed to be set up as a counterclaim must be in existence at the commencement of the action. It may be answered that there is no provision therein that matters arising after the commencement of the action may be pleaded.

It is obvious from the language of the Code that the issues to be tried are fixed by the facts as they exist when the action is commenced. Any other rule would result in utter confusion. If the plaintiff could change the complaint, or the defendant the answer, every time some new thing developed in the progress of the case, there would be no end to the litigation, and no litigant would know how to prepare his case for trial.

The provision of Section 468 is that the counterclaim must be one "existing" in favor of defendant and upon which a several judgment may be had *in the action.*

We think the rule is universally recognized that the cause of action upon which a counterclaim is founded must exist in favor of the defendant at the time of the commencement of the action.

In the case of *Enter v. Quesse*, 30 S. C., 126, 8 S. E., 796, 14 Am. St. Rep., 891, Mr. Chief Justice Simpson said:

"It is contended by appellants, first, that under the provisions of the Code they should have been allowed to set up their claim as an ordinary counterclaim—it being a matter arising on contract, and the action against them also arising on contract—although the claim of defendants was brought by them after the commencement of plaintiff's action, and even after answer had been put in, defending the suit upon other grounds.

"It is conceded that, under the old practice, and before the adoption of the Code, no claim of set-off arising under such circumstances would have been entertained or considered for a moment; it having been long since well settled that, to entitle a debtor when sued to set off a claim against his suing creditor, said claim must have had existence in his favor at the commencement of plaintiff's action. It is urged, however, by appellants that this matter is now regulated by our Code, and that there is nothing express in the language of the Code which denies to a defendant the right to set up such a claim as a counterclaim; the Code in its terms only requiring that the alleged counterclaim should have existence at the commencement of plaintiff's action. See Code Civil Proc., § 171 (now Section 468). This is true, as to the language of the section referred to. *But we think that this section must be construed under the light of the long-established principles of force on the subject of set-off, before the adoption of the Code, everywhere understood and enforced, both at law and equity, where set-offs were allowed.* See *Shepherd v. Turner*, 3 McCord, 249 [15 Am. Dec., 631]; *Bishop v. Tucker*, 4 Rich., 178-183; Wat. Set-Off, § 381, where he says: 'A debt cannot be set off in equity any more than at law, unless it existed against the plaintiff, in favor of the defendant, at the time of the commencement of the suit,' etc. In the State of New York, where the language of the Code on this subject is precisely that of ours,

there seems to be no question as to this matter. *The counterclaim must be, not only in existence, but in existence in favor of the defendant interposing it, and at the time the action against him has been commenced."* (All italics added.)

"Debts to be set off must be mutually *subsisting* debts *at the time* the action is brought." *Shepherd v. Turner,* 3 McCord, star page 249, 15 Am. Dec., 631.

We will not prolong the discussion. We deem it clear that the defendant cannot maintain its counterclaim because it arose after the commencement of the action.

Defendant expresses apprehension lest plaintiff now revive the original action. The fear is groundless, especially in view of the ruling of this Court in this case.

Defendant seems to think it is hard that it should be compelled to enforce its claim by suing a foreign corporation in the forum of its domicile. It may not be impertinent to remark that the genesis of defendant's trouble lies in the fact that it did not pay the second installment of the compromise agreement when it was due. His present embarrassments arise from his subsequent dealings with plaintiff.

The demurrer to the amended answer and counterclaim should have been sustained on the grounds:

First, that the action by plaintiff against the defendant had been terminated by the compromise agreement, and defendant could not revive it by filing and serving an amended answer and counterclaim.

Secondly, that the counterclaim sought to be interposed could not be maintained because the alleged cause of action upon which it is founded arose after the commencement of plaintiff's action.

The order overruling the demurrer to the amended answer and counterclaim is reversed; and the amended answer and counterclaim are dismissed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter and Mr. Acting Associate Justice W. C. Cothran concur.