R. P. ANDREAS & SON, Appellee, v. F. M. HEMPY, Appellant.

No. 44085.

562

DECEMBER 14, 1937.

REHEARING DENIED APRIL 11, 1938.

Donnelly, Lynch, Anderson & Lynch and William M. Dallas, for appellee.

Fred Fisher, George C. Claassen, and R. S. Milner, for appellant.

KINTZINGER, J.—When this action was commenced on September 8, 1932, the plaintiff was, and for a number of years prior thereto had been engaged in conducting a grain elevator at Lisbon, Iowa, and the defendant was engaged in farming in Jones County, Iowa. On May 22, 1931, he had over 3,000 bushels of corn in his cribs on the farm. At that time he made an agreement with plaintiff for the storage and sale of about 2,000 bushels of this corn in plaintiff's elevator at Lisbon, Iowa. Plaintiff alleges that at the time the contract was entered into no definite time for the sale of the corn was fixed, and therefore contends that it was entitled to sell the corn within a reasonable time after the option date in the contract. The agreement for the storage and sale of the corn is evidenced by the following contract:

"EXHIBIT 'A'

"Lisbon, Iowa. May 22, 1931.

"This contract is entered into this day between R. P. An-

dreas & Son, and Frank Hempy. R. P. Andreas & Son have received for storage 1996/30 bushels of corn from Frank Hempy to be sold to them, *sellers option as to time*, at 15¢ per bu. under average Chicago price for No. 2 yellow corn on date of sale. Storage free to Sept. 1st, 1931, after that, seller agrees to pay storage at the rate of ½c per month. Buyers have paid to seller 40c per bu., and at the time of final sale of corn, if according to this contract, net price to seller is over 40c per bu., buyers agree to pay balance in cash, and if net price to seller is under 40c per bu., seller agrees to refund amount due buyers in cash.

"Buyers. R. P. Andreas & Son.

"R. P.

"Sellers. F. M. Hempy."

Appellee alleges in its petition, and the record shows, that the corn in question remained in plaintiff's elevator without any order from defendant to sell until after May 3, 1932, at which time plaintiff mailed to defendant the following letter, known as Exhibit B:

"Mr. Frank Hempy, Lisbon, Iowa.

"Dear Sir: On May 22, 1931, you delivered to us under written contract then executed 1996 bushels of corn. The purchase price of this corn was to be fixed on the basis of the Chicago market for No. 2 yellow corn on date to be determined by you, less 15c per bushel, and you agreed to pay storage at the rate of ½% per month after September 1, 1931. You have not fixed a date for settlement under this contract and have not paid any of the storage since September 1st.

"You are hereby notified that the undersigned demand that you fix some date between this time and August 1, 1932, for the determination of the purchase price of the corn in the manner fixed by your contract and that you make settlement with the undersigned as provided in said contract.

"If you desire to have the matter carried beyond August 1, 1932, and will pay up the ½% per month per bushel accrued and accruing the undersigned will be willing to allow you a further period of 90 days within which to fix the date for the final settlement under the contract and the determination of the price of the corn. * * *"

On November 18, 1932, the defendant in his answer to plaintiff's petition denied each and every allegation therein con-

tained except such as are expressly admitted. Defendant admits that plaintiff is a copartnership as alleged, engaged in conducting a grain elevator at Lisbon, Iowa; he admits signing the contract marked Exhibit A, and that he delivered 1,996.30 bushels of corn to the plaintiff for storage and sale under the terms of said contract; he admits being paid 40c per bushel thereon, amounting to $798.52; he also admits that he did not exercise his option under the contract at the time of filing his answer; and also admits receiving the letter referred to as Exhibit B.

The record shows that the prevailing price of corn on the Chicago market on August 1, 1932, was 32½c per bushel. Appellee contends that it was entitled to deduct the sum of 15c per bushel from the Chicago price, together with the storage charges thereon, and that appellant was therefore indebted to plaintiff for the difference between the Chicago price, less deductions, and the amount advanced to appellant on May 22, 1931, with interest.

At the trial of the case the defendant, on his own behalf, testified that he had a large quantity of corn stored on his farm in cribs and that before the contract referred to as Exhibit A was entered into, Mr. Andreas, a member of plaintiff's firm, came to defendant's farm for the purpose of purchasing the corn. At that time defendant had a conversation with Mr. Andreas with reference to the storage and purchase of this corn by the plaintiff. At the trial the defendant Hempy was placed upon the witness stand and was asked the following question:

"Q. You may tell the jury in your own way, as nearly as you can recall, that conversation; what Albert said to you about wanting to buy your corn, and what you said to him?"

This was objected to by appellee as calling for an opinion and conclusion of the witness, and being an attempt to vary or contradict the terms of the written agreement, not defensive, or in any manner material to the defense. This objection was sustained and defendant excepted.

Thereupon defendant's counsel made the following profert of testimony, in substance, which he intended to prove by the witness Hempy:

"That a few days before the written contract was entered into, Albert Andreas, a member of plaintiff company, came

to his farm and asked him if he had some corn for sale; that Hempy replied that he did, but that he wanted to hold it for a higher price; that Andreas then told him they were anxious to buy some corn and that if he would sell the corn to them they would advance him 40c a bushel against the price; that they would buy his corn and store it for him until he got ready to sell at a better price; that Albert told him that he couldn't possibly lose anything; that he did not have to pay the storage from month to month as it accrued but that the storage could be paid out of the price of the corn when it was finally sold; that defendant told Andreas that if he sold the corn he might want to hold it up ten years in order to get the price he wanted; that Andreas said, 'You can hold it up to that time if you want to, and you can come in any time you want to sell it and we will make that the settlement date'; that they then agreed to the sale.

"That defendant would also testify that at that time corn was selling locally at 53c to 55c a bushel.

"*That defendant told Andreas that the reason he did not want to sell then was because the price was too low and he wanted to hold the corn until he could get a higher price.*

"That on or about the 28th of July, 1932, the defendant met Albert Andreas, and after referring to the stored corn, Albert said to the defendant: 'What do you think of what the corn prices are doing?' That Hempy said: 'Corn prices certainly are bad.' In response to which Andreas said: 'They are awful, and I think we better carry your corn along for a while yet.' To which Hempy responded: 'This is just what I intended to do.'"

Defendant's counsel also offered to show that defendant would testify:

"That on November 24, 1934, he mailed the plaintiff a notice properly addressed and stamped advising plaintiff that he was then electing to sell his corn; that a few days thereafter he called at plaintiff's offices and told Andreas personally that he was exercising his option to sell the corn and asked for a settlement; that Albert then secured the Chicago quotations and found that the average price of No. 2 yellow corn on that date was 96c a bushel; that after learning the price and deducting the storage and 15c per bushel from the Chicago price, he found

that there was a difference of 22½c per bushel due Hempy, and that he told Hempy he would hear from them within a few days; that Hempy did not hear from the plaintiff thereafter for about six weeks, when he was notified he would have to go to Lynch's office for settlement.''

Defendant's counsel also offered to show that Hempy would testify:

"That the average Chicago price of No. 2 yellow corn on the Chicago market was at all times between May 22, 1931, and June 1934, except during the month of July, 1931, lower than the price of corn on May 22, 1931.''

All of this proffered testimony was objected to as calling for an opinion and conclusion of the witness, and being an attempt to vary and contradict the terms of the written agreement, not defensive, or in any manner material to the defense. The objection to all of this proffered testimony was sustained and defendant excepted. Both sides rested.

Thereupon plaintiff made a motion for a directed verdict against the defendant for the amount sued on, upon the ground that the contract, being silent as to the time when the corn should be sold, and as the defendant had not exercised his option as to the time of selling within a reasonable time after the execution of the contract, plaintiff was entitled to fix the time of sale, which, after notice to defendant, plaintiff set for August 1, 1932; and that plaintiff was entitled to have the contract price for settlement fixed at the price of No. 2 yellow corn at Chicago on August 1, 1932, which, less deductions, amounted to $558.90.

The court sustained this motion and entered judgment against defendant in that amount. Hence this appeal.

I. Appellant contends that this testimony was admissible because the entire contract between the parties was not set out in the written agreement; that the written agreement as to the time of sale was not clearly expressed but provided that the corn was to be sold at "seller's option as to time"; that this agreement was clearly uncertain and ambiguous as to the time when the corn was to be sold.

■■■ Appellant contends that evidence of the oral understanding made shortly before the execution of the written agreement was admissible as bearing on the question as to what was a

reasonable time for the exercise of defendant's option to sell. It is true that where money is due on demand or where services are to be performed on demand, such terms are generally construed as meaning that the demand should be made within a reasonable time after the execution of a contract. The written contract, however, clearly indicates that the corn was being held in storage for a higher price than that prevailing at that time, and that defendant's option is not to be exercised until such time; it provides for holding the corn free of storage charges until September 1, 1931, with a provision for further storage thereafter at ½c per bushel, *without any definite provision as to how long thereafter the corn was to be stored or when the storage was to be paid*. As these matters were not inserted in the written agreement, it is clear that the entire contract is not contained therein.

The proffered evidence also tends to show that it was defendant's purpose to hold the corn in storage for a higher price; that at the time this corn was stored the prevailing price was from 53c to 55c per bushel, and that the plaintiff made an advancement of 40c a bushel thereon. It is, therefore, clear that it was within the contemplation of the parties that the corn be stored until it reached a higher price than was prevailing when it was placed in the elevator.

It is also a matter of common knowledge that corn was generally stored after 1932, and that government loans were made thereon for the purpose of holding it for a higher price. It was also the consensus of public opinion generally, that, when the government corn loan program was put into operation, it would result in a substantial rise in the price of corn. This was the very purpose of the government corn loan program. Subsequent events established the correctness of such conclusion by the subsequent rise in the price of corn. The testimony offered by the defendant and subsequent events show conclusively that if the corn had not been sold until defendant exercised his option to sell in 1934, plaintiff would not have lost a cent by waiting for the exercise of defendant's option to sell. The very purpose of storing this corn was to receive a higher price. This purpose as shown by the proffered testimony coincided with the very objects and purposes the government had in view by its corn loan program. It might reasonably have been expected that it would take some time for a sufficient rise to warrant a

sale. It can hardly be said, therefore, as a matter of law, that defendant did not exercise his option *within a reasonable time* by waiting for a higher price. This was clearly a question for the jury under the circumstances in this case.

It is our conclusion from the evidence that the entire contract entered into between the parties was not contained in the written agreement; and where the entire contract btween the parties is not contained in such agreement, parol evidence as to the parts omitted is admissible and does not violate the parol evidence rule.

Where an agreement is partly in writing and partly in parol, parol evidence is admissible to establish the entire agreement. 22 C. J. 1283, Sec. 1715; Horner v. Maxwell, 171 Iowa 660, l. c. 666, 153 N. W. 331; Ingram v. Dailey, 123 Iowa 188, 98 N. W. 627; Sutton v. Griebel, 118 Iowa 78, 91 N. W. 825; Craver v. Birmingham, 191 Iowa 512, 182 N. W. 787; Tracy Land Co. v. Polk County Land & Loan Co., 131 Iowa 40, 107 N. W. 1029; Harris v. Moore, 134 Iowa 704, 112 N. W. 163.

This rule is announced in section 1715, 22 C. J. 1283, as follows:

"Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to the matters not provided for in the writing, and under such circumstances it is not necessary that there should be any allegations of fraud, accident, or mistake in order to render parol evidence as to the real contract between the parties admissible."

In Horner v. Maxwell, 171 Iowa 660, 666, 153 N. W. 331, 333, the court said:

"It is only when the writing, construed in the light of the purpose for which executed, shows that it was meant to contain the whole bargain between the parties, that extrinsic proof of a distinct and separate oral agreement is held to be inadmissible."

In Ingram v. Dailey, 123 Iowa 188, l. c. 190, 98 N. W. 627, this court said:

"The contract does not fix the time as to when the labor was to be performed, nor does it specify the kind of work to be done.

Parol evidence would not, therefore, tend to vary or contradict anything in the written lease. The agreement as to the kind of labor, and as to the time when it was to be performed, might very well rest in parol. The instrument is manifestly incomplete in this respect, and it is perfectly proper in such cases to show either antecedent or contemporaneous agreements resting in parol. Peterson v. R. R. Co., 80 Iowa 92, 45 N. W. 573. It is only when the agreement, construed in the light of the circumstances in which and the purposes for which it was executed, shows that it was meant to contain the whole bargain between the parties, that extrinsic parol evidence is inadmissible. * * * The evidence offered in this case did not tend to change, vary, or contradict a single word in the written instrument, and it should have been received.''

In Sutton v. Griebel, 118 Iowa 78, 1. c. 79, 91 N. W. 825, this court said:

''The rule that the terms of a written instrument cannot be contradicted by parol evidence of a contemporaneous oral agreement is subject to well-recognized exceptions. A collateral oral agreement relating to matters not covered by the written agreement may be shown. * * * An oral agreement collateral to the writing, and serving as an inducement for the signing thereof, may be shown.''

A long list of additional cases supporting this rule is set out in the note under section 1715, 22 C. J. 1283, 1. c. 1284.

■■■ The defendant filed a general denial to plaintiff's petition. This would bring in issue the question as to whether or not defendant has performed his contract. It is a question for the jury to determine whether or not defendant exercised his option within a reasonable time. If the jury should determine that a reasonable time for the exercise of this option gave defendant the right to withhold his order to sell until such a time that the price of corn on the Chicago market was higher than prevailing when the corn was stored, then the offered testimony would be competent as tending to show the contract had not been performed. Tracy Land Co. v. Polk County Land & Loan Co., 131 Iowa 40, 107 N. W. 1029; Harris v. Moore, 134 Iowa 704, 112 N. W. 163.

■■■ II. Appellant contends that the court erred in not ad-

mitting this testimony for the further reason that the excluded evidence has a bearing upon the question as to what is a reasonable time under all the circumstances in this case. It is the general rule that the question as to what constitutes a reasonable time is one for the jury where the writing does not express the entire agreement of the parties with respect to the time of performance. Parol evidence may be received on the theory that it does not vary the writing but merely throws light on the question as to what is a reasonable time. 22 C. J. 1076, Sec. 1382.

As hereinabove indicated, this contract was of a peculiar nature and ambiguous as to the time of consummating the sale. The only statement in the writing as to the time of performance was the words: "R. P. Andreas & Son have received for storage 1996/30 bu. of corn from Frank Hempy to be sold to them, *sellers option as to time,* at 15c per bu. under average Chicago price * * * on date of sale." The evidence offered in this case tends to throw light upon the question as to when the seller's option was to be exercised. The contract itself, owing to its uncertainty as to the time when the option was to be exercised, is ambiguous.

Appellee contends that under the terms of the agreement the seller's option should have been exercised within a reasonable time after the date of the contract. The oral evidence introduced, however, tends to show what would be a reasonable time in the contemplation of the parties at the time the contract was entered into. This evidence, therefore, is clearly competent as bearing on the question as to what was "a reasonable time."

A reasonable time for the performance of one contract might be different from what would be considered a reasonable time for the performance of another. In Kelley, Maus & Co. v. Hart-Parr Co., 137 Iowa 713, 716, 115 N. W. 490, 491, this court quoted with approval the following language from Boyington v. Sweeney, 77 Wis. 55, 45 N. W. 938:

" 'Where there is no time fixed for the doing of an act which a contracting party agrees to do, he must do such act within a reasonable time; and what will, in the particular case, be a reasonable time depends upon the nature of the act to be done, the nature of the contract, and all the circumstances relating to the same.' "

Therefore, what was a reasonable time under the peculiar

circumstances of this case was a question for the jury. Section 9948, Rule 3, Iowa Uniform Sales Law; Van Dyck v. Abramsohn, 214 Iowa 87, 241 N. W. 461; Brennan & Cohen v. Nolan Laundry Co., 209 Iowa 922, 229 N. W. 321; Goss v. Smith, 178 Iowa 348, 159 N. W. 984; Lucas v. Western Union Tel. Co., 131 Iowa 669, 109 N. W. 191, 6 L. R. A. (N. S.) 1016; Blecher v. Schmidt, 211 Iowa 1063, 235 N. W. 34.

Section 9948, Rule 3, subd. 2, par. b, of the Iowa Uniform Sales Law provides as follows:

"If no time has been fixed [for the return of goods], [then they are to be returned] on the expiration of a reasonable time. *What is a reasonable time is a question of fact.*" (Italics ours.)

If, therefore, the contract in question should be construed as requiring the defendant to exercise his option within a reasonable time, then the question as to what is a reasonable time is one of fact for the jury.

In Brennan & Cohen v. Nolan Laundry Co., 209 Iowa 922, l. c. 925, 229 N. W. 321, 322, this court said:

"It is quite clear that, under the record, the question of reasonable time is one of fact, for the determination of the jury."

So also in Goss v. Smith, 178 Iowa 348, l. c. 352, 159 N. W. 984, 985, this court, speaking through the late Justice Evans, said:

"It will be noted that the contract fixed no time limitation for the sale of the * * * land. The law would, therefore, imply a reasonable time. * * * It could not be found that he had breached the contract, without first finding that a reasonable time had not elapsed. *That would be ordinarily a question for the jury; and, if material, was a jury question in this case.*" (Italics ours.)

Likewise, in Van Dyck v. Abramsohn, 214 Iowa 87, l. c. 91, 241 N. W. 461, 463, this court said:

"The burden is upon the defendant to establish rescission within a reasonable time after ascertaining the falsity of the representations previously relied upon by her. * * * What is a reasonable time must be considered with reference to all of the

circumstances. A lapse of time which would be unreasonable in one case may be entirely reasonable in another.''

Of similar import is the case of Blecher v. Schmidt, 211 Iowa 1063, 1067, 235 N. W. 34, 36, wherein this court said:

''What is a reasonable time must be considered with reference to all the circumstances. A lapse of time which would be unreasonable in one case may be entirely reasonable in another. * * * Whether the right to rescind was exercised within a reasonable time is usually a question for the jury. * * * Under the issues as drawn, all the plaintiff needed to prove, in order to recover, was fraud as alleged, and that rescission was made within a reasonable time. These are the matters which are asserted by the plaintiff and denied by the defendants. *These questions should have been left to the jury.*'' (Italics ours.)

The outstanding circumstances in this case as shown by the offered testimony are that the defendant intended to and did leave his corn with the plaintiff company for the very purpose of holding it for a higher price than that prevailing at the time when the corn was delivered. Such proffered evidence tends to show that the price of corn did not rise above the prevailing price when the corn was placed in storage at any time prior to its disposal and sale by the plaintiff. It also shows that corn had such a higher price in 1934. Such evidence, therefore, has a material bearing upon the question as to whether or not the corn was sold within a reasonable time after it was placed in storage.

Appellee cites a number of cases in which it is held under the facts therein that the question of a reasonable time may be determined by the court as a matter of law. An examination of these cases, however, will show that the circumstances are entirely different from the circumstances in the case at bar and are, therefore, not applicable to the facts of this case. Although these cases relate almost entirely to the question of the rescission of a contract, they also hold generally that whether or not a rescission was timely is a question for the jury. Chariton Plumbing & Heating Co. v. Lester, 202 Iowa 475, 210 N. W. 584.

It is our conclusion that under the circumstances in this case it would be a question for the jury to say whether or not the defendant acted within a reasonable time to exercise his option to sell.

We are, therefore, constrained to hold that the testimony offered in this case was competent as tending to show the entire contract, and also as throwing light upon the question as to what was a reasonable time, and as such should have been admitted.

For the reasons hereinabove expressed, the judgment of the lower court in directing a verdict for plaintiff was erroneous. The judgment is, therefore, reversed.—Reversed.

HAMILTON, C. J., and ANDERSON, STIGER, SAGER, and DONEGAN, JJ., concur.

RICHARDS, J., concurs in result.